# Exhibit A

FILED
3/8/2023 3:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 32
21782997

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE: THE FORMER MARRIAGE OF | ) | |
| | ) | |
| KENTON GIRARD, | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No.    2015 D 009633 |
| | ) | |
| JANE GIRARD, | ) | |
| Respondent. | ) | |

## MOTION TO JOIN THIRD PARTY

NOW COMES the Respondent, JANE GIRARD ("Jane"), by and through her attorneys,

BEERMANN LLP, pursuant to Section 5/2-406 of the Illinois Code of Civil Procedure (735 ILCS

5/2-406), and in support of her Motion to Join Third Party, Jane respectfully states as follows:

1.     Two (2) children, twins, were born to the parties as a result of their marriage,

namely: Gwen Girard, presently fifteen (15) years old; and Grace Girard, presently fifteen (15)

years old.

2.     On November 4, 2015, this Honorable Court entered a Judgment for Dissolution of

Marriage. In conjunction with the entry of the Judgment for Dissolution of Marriage, this Court

approved and entered the parties' Joint Parenting Agreement Custody Judgment ("JPA"). A true

and accurate copy of the JPA is incorporated herein by reference only as **Exhibit A.**

3.     The JPA provided for an equal, 50/50 parenting time schedule, which was a "5-2-

2-5" schedule.

4.     For approximately the past four (4) years, the parties have followed a week on-

week off parenting time schedule such that the minor children are with Jane for one (1) full week

and then with Kenton the next week, alternating on Fridays after school. Although the parenting

time schedule in the JPA is a 5-2-2-5 schedule, the parties mutually agreed to via email to modify

1

the 5-2-2-5 schedule to an alternating week schedule to meet the children's growing and changing needs and to create more consistency for the children.

5. Since the entry of the Judgment for Dissolution of Marriage and the JPA, the Petitioner, KENTON GIRARD ("Kenton"), has remarried.[1]  Kenton and his spouse, Marissa Girard, have resided together since 2015.

6. After entry of Judgment, Jane and Kenton had successfully co-parented the minor children for over five (5) years without major incident.

7. Kenton, with Marissa's support and influence, has alienated the minor children from Jane beginning in mid-2020.  Upon information and belief, Marissa has been instrumental in the ongoing alienation perpetrated by Marissa and Kenton to damage the relationship between Jane and the minor children.

8. Marissa, a *stepmother*, has muscled her way in to the children's lives as if she was their mother.  Beginning 2020, Marissa has ignored all appropriate boundaries as a stepparent.  Since approximately fall 2022, Marissa has essentially taken over Jane's role as the children's mother.  This includes not only spending time with the children – who now refuse to see their mother – but also making many day-to-day decisions.

9. Marissa has made "significant decisions" (pursuant to 750 ILCS 5/602.5) but also

10. Marissa, upon information and belief, has inappropriately inserted herself into parenting decisions (which should only be made by Kenton and Jane), and has manipulated the minor children's feelings/thinking.  Further, Marissa has intimidated, threatened and harassed Jane.  By way of example:

    a. Marissa has, on numerous occasions, held herself out to be the minor children's mother, including, but not limited to, the following incidents:

---

[1] Kenton married Marissa within approximately 1 month of the parties' divorce.

2

i.  In or about December 2021 and January 2022, Kenton and Marissa sent numerous emails to the superintendent of the minor children's school regarding the COVID vaccination and testing policies of the children's school. Gwen was a participant in the school musical, and thus was required to participate in the COVID testing. Kenton and Marissa referred to themselves as Gwen's parents and to Gwen as "our daughter." Kenton and Marissa did not include Jane on any of the email communication. Jane only discovered the email communication because the superintendent forwarded the email communication to Jane.

ii. In or about September 2022, at Parent's Night at the minor children's school, Kenton and Marissa introduced themselves to the class of parents and children as "Grace's parents," causing confusion and an uncomfortable atmosphere as Jane was in the room and had already introduced herself as Grace's mom.

iii. On October 21, 2022, Jane received communication from the minor child's former doctor at Kenilworth Medical Associates indicating that a woman called claiming to be Jane. Kenilworth Medical Associates forwarded a copy of a phone message which indicated that "(Mom) Jane" had called the office requesting a change in doctors. The message included a call-back number, which is Marissa's personal cell phone number. A true and accurate copy of the October 21, 2022 phone message is attached hereto as **Exhibit B**.

iv. On October 24, 2022, Marissa emailed Kenilworth Medical Associates stating, "… - just following upon this request as **my daughter** has her appt with new provider this week." Kenton then sent an email to Kenilworth Medical Associates stating, "I am authorizing Marissa Girard … **to make any other decision needed regarding Grace Girard's medical records at Kenilworth Medical Associates**." A true and accurate copy of the October 24, 2022 email correspondence is attached hereto as **Exhibit C**.

b. On or about August 5, 2020, Marissa texted Jane individually requesting that Kenton, Jane and Marissa, together, attend family therapy. Jane then suggested meeting with Sasha Von Varga, with whom the parties have previously met and who is aware of the family history and dynamics. Marissa moved the conversation to a group text between Jane, Kenton and Marissa, whereby Marissa stated that she has "more expertise than both of you" ('you' referring to Kenton and Jane) regarding the minor children's needs and best interests. Marissa then continued to text disparaging, insulting and argumentative messages to Jane regarding the children. Thereafter, Marissa (who initially requested that the parties and Marissa engage in therapy) stated that she and Kenton would actually *not* engage in therapy. At no point did Kenton engage or put a stop to Marissa's combative and offensive behaviors and comments. A true and accurate copy of the text messages from Marissa to Jane on August 5, 2020 are attached hereto as **Exhibit D**.

c. On or about May 11, 2021, after an incident whereby Kenton had yelled and threatened Jane in relation to his demands that Jane purchase the minor children Google Chromebooks, <u>Marissa sent an inappropriate and unsolicited text regarding child support to Jane saying "also fyi kenton has taken a significant pay cut. He is stressed. Renters aren't paying. So it's a lot right now for him. // pls read between the lines… a significant reduction in income impacts your payments. So I would not push too far on this.</u>" A true and accurate copy of the May 11, 2021 text messages from Marissa to Jane are attached hereto as **Exhibit E.**

d. On or about August 29, 2022, Marissa and Kenton verbally attacked Jane in public and in front of the minor children at Grace's art show, demanding that Jane acquiesce to Marissa and Kenton's unilaterally-determined parenting time schedule change (which was to eliminate Jane's parenting time). <u>Marissa threatened Jane, stating that Marissa has "all the money to take [Jane] to court and make sure the girls are never with you." Marissa and Kenton further threatened that if Jane did not agree to the parenting time schedule change right in that moment, then Kenton would file to "have custody of the girls" and to keep the girls from Jane.</u> Marissa and Kenton continuously pulled both Grace, who was presenting at the art show, and Gwen away for private conversations away from Jane. Kenton and Marissa demanded that the minor children tell Jane that the children wanted to live with Kenton and were yelling that Jane is liar and that Jane was calling the minor children liars in front of the children and other parents/children at the art show.

e. On December 9, 2022, without discussion or agreement between the parties, Marissa, , took the minor children to Jane's residence while Jane was out of town. Jane expressly told the children that she did not want them in her home unattended and to coordinate a time once she was back in town. The children disregarded their mother completely and went into the house anyway, setting off the Jane's security system. Marissa drove the children and actively encouraged and supported the children entering their mother's home to remove many of the minor children's belongings and items from Jane's residence knowing Jane was out of town. Jane viewed the garage security camera footage and saw Marissa pull up in her car, exit her car, and assist the girls in loading a majority of their belongings (clothes, blankets, stuffed animals, photos, books, posters, etc.) from Jane's residence.

f. The minor children had been treated by their pediatrician since birth. On or about January 6, 2023, Jane reviewed her insurance coverage and benefits (Jane covers the children on her health insurance policy). In reviewing the same, Jane saw that Gwen went to a new pediatrician on December 28, 2022 to be treated for an ear infection. After speaking with the new pediatrician Jane was informed that the minor children had their annual physicals scheduled. Jane was not made aware of these appointments when they were scheduled.

g. On January 16, 2023 (10 days later), both minor children were scheduled for their annual physical exams. Jane attended the appointment, as she has always done in

the past. Kenton brough Gwen to the appointment and Marissa arrived shortly thereafter with Grace. Once in the exam room, Marissa asked Kenton, loud enough for Jane and both minor children to hear, to go to the front desk to have "someone make Jane leave." In order to avoid further confrontation in front of the minor children, Jane voluntarily left the exam room and went to the waiting room. Both Kenton and Marissa remained in the exam room with both minor children for the **entirety** of their physical exams, though Marissa is ***not*** the minor children's mother nor guardian. Marissa then left with Grace, directing Grace away from Jane and did not encourage any interaction between Grace or Jane, and instead completely ignored Jane in the waiting room.

h.  Upon information and belief, Marissa has repeatedly insinuated directly to the minor children that they may not be "safe" while at Jane's residence, along with telling the minor children that Jane "needs therapy," that the children are "victims," and encouraging the children to alienate themselves from Jane to protect themselves from her.

i.  For the past two (2) or more years, Marissa has also actively reached out to Jane to criticize Jane, Jane's parenting, and Jane's relationship with the children. In her criticisms, Marissa refers to her educational background and her claimed professional history as a counselor in an attempt to bolster her reasonings and allegations against Jane that Jane is not a "good parent" and that Jane "needs therapy."

11.  It is clear that Marissa has overstepped her role as the children's stepparent, inserting herself into decisions related to the children and has been a controlling, demanding voice in conversations relating to the children, though she **is not the children's mother**.

12.  Marissa completely disregards all boundaries as a stepparent.  Kenton actively encourages Marissa's behaviors.

13.  Marissa and Kenton have encouraged the children to reject Jane.  The children, who used to spend 50% of their time with both parents, now have spent 0 overnights with their mother since August 28, 2022, continually refuse Jane's invitations to spend time together, rarely reply to any of Jane's text messages/phone calls/emails, and simply ignore any attempt Jane makes to connect with her children.

14.  Through Marissa's manipulative actions over the past two or more years, Marissa

has damaged the co-parenting relationship between Jane and Kenton and the minor children's relationship with the minor children.

15.    Marissa's behaviors, which are supported by Kenton, are causing long-lasting mental and emotional harm to the minor children through Marissa's efforts to remove Jane from the children's lives.

16.    Section 5/2-406(a) of the Illinois Code of Civil procedure provides that "[i]f a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in." 735 ILCS 5/2-406(a) (Westlaw, 2023).

17.    A party is necessary for a full determination of the issues when he/she is:

> [O]ne whose presence in the suit is required for any three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by the judgment entered in his absence; (2) to reach a decision which will protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy.
>
> *In re Marriage of Schweihs*, 222 Ill.App.3d 887, 894 (1991) (Citing *Lerner v. Zipperman*, 69 Ill.App.3d 620, 623 (1979).

18.    Joining Marissa as a third party in this matter is essential to allow the Court to make a full determination of the parenting issues. Put another way, the Court must join Marissa in this action so this court can "make a complete determination of the controversy," including Marissa's actions, behaviors and influence over the minor children.

19.    Dr. Phyllis Amabile is the Court's evaluator pursuant to 750 ILCS 5/604.10(b). Dr. Amabile must also have the ability to interview Marissa.

20.    Moreover, Marissa should be joined as a third party in order for the Court to adjudicate all matters pertaining to the minor children, and ultimately for the Court to enter all appropriate orders regarding Jane, the minor children, and Kenton, as well as Marissa.

21. Based on the foregoing, Marissa has placed herself at the center of this litigation by exerting care and exercise over the minor children, behaving in an inappropriate and controlling manner towards the children, and harassing and threatening Jane. As such, she should be formally joined in this litigation so that the Court can properly adjudicate these issues regarding the parties' minor children, and Jane's role as their mother.

**WHEREFORE**, the Respondent, **JANE GIRARD**, by and through her attorneys, BEERMANN LLP, respectfully requests the following:

A. For entry of an Order joining Marissa Girard as an additional third-party respondent in this cause with summons to issue; and

B. For such other and further relief as this Honorable Court deems equitable and just.

Respectfully submitted,
**BEERMANN LLP**

One of the Respondent's Attorneys

Karen V. Paige | Candace L. Meyers
Molly M. Carmody
**BEERMANN LLP**
*Attorneys for the Respondent*
161 North Clark Street – Suite 3000
Chicago, Illinois 60601
T: (312) 621-9700
Firm ID: 80095
kpaige@beermannlaw.com
clmeyers@beermannlaw.com
mmcarmody@beermannlaw.com

7

## **VERIFICATION BY CERTIFICATION**

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

JANE GIRARD

8

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
 to get more information and Zoom Meeting Link
Remote Court Date: No hearing scheduled

FILED
5/26/2023 2:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 32
22905247

**Summons/Alias Summons**                          (09/09/21) CCDR 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: ☐ Legal Separation   ☐ Allocation of Parental Responsibilities
☐ Visitation (Non-Parent)   ☐ Support   ☐ Parentage of:   [X] Marriage

KENTON GIRARD
_____
                          Petitioner

              and

JANE GIRARD            Respondent

MARISSA GIRARD      Third Party Respondent
* Hearing/Return Date:

_____ at _____   AM   PM

* Applies to Suburban Districts ONLY

Case No.    2015 D 009633

Calendar    32

** Please serve the Respondent at:

Marissa Girard

965 Forestway Drive, Glencoe, IL 60022

2105 - Summons - Retd - Substitute Service
2106 - Alias Summons - Retd - Substitute Service
2120 - Summons - Retd P.S.
2121 - Alias Summons - Retd P.S.
2123 - Summons Retd - Served at Correctional Facility
2220 - Summons - Retd N.S.

2221 - Alias Summons - Retd N.S.
2700 - Return of Service P.S. - Order of Protection
2702 - Return of Service N.S. - Order of Protection
2708 - Return of Service of Order - P.S.
2710 - Return of Service of Order N.S.

☐ SUMMONS   ☑ ALIAS SUMMONS

TO THE RESPONDENT:

The Petitioner has filed a legal proceeding against you for one or more of the following:

☐ Legal Separation   ☐ Declaration of Invalidity   ☐ Custody   ☐ Child Support
☐ Praecipe for Summons*
☑ Other:  Motion to Add Third Party
_____

**YOU ARE SUMMONED** and required to file your **appearance and response no later than** • **thirty (30) days**  **seven (7) days after service of this summons**, not counting the day of service.
**If you fail to file your written appearance within the time stated above, a default judgment may be entered against you and the court may grant the petitioner all or part of the relief that s/he is requesting in her or his petition.**

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons/Alias Summons**                                               **(09/09/21) CCDR 0001 B**

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**TO THE OFFICER:** This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

5/30/2023

Atty. No.: 80095

Atty Name: Beermann LLP (Karen V. Paige)

Atty. for: Respondent, Jane Girard

Address: 161 North Clark Street, Suite 3000

City: Chicago

State: IL    Zip: 60601

Telephone: (312) 621-9700

Primary Email: kpaige@beermannlaw.com

Witness: _____

Date: 5/26/2023 2:21 PM IRIS Y. MARTINEZ

Circuit Court Clerk

Date of Service: _____

(To be inserted by officer on copy left with Respondent or other person):

_____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.com/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
3/5/2025 3:01 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 01
31689167

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

|  |  |  |
|---|---|---|
| *IN RE THE FORMER MARRIAGE OF* | ) | |
| KENTON GIRARD, | ) | |
| Petitioner, | ) | |
| | ) | Hon. Rossana P. Fernandez |
| vs. | ) | |
| JANE F. GIRARD, | ) | Case No. 2015-D-009633 |
| Respondent, | ) | |
| - - - - - - - | ) | |
| MARISSA GIRARD, | ) | |
| Third Party Respondent/<br>Third Party Plaintiff | ) | |
| vs. | ) | |
| JANE F. GIRARD, | ) | |
| Crossclaim Defendant, | ) | |
| VANESSA L. HAMMER ESQ,<br>KAREN V. PAIGE ESQ,<br>CANDACE L. MEYERS ESQ,<br>DETECTIVE RYAN MCENERNEY, | ) | |
| Third Party Defendants. | ) | |

### TP PLAINTIFF MARISSA GIRARD'S CROSSCLAIMS AND TP CLAIMS

Now comes Third Party Plaintiff MARISSA GIRARD, in pro se, and in support of her

Claims against Crossclaim Defendant JANE F. GIRARD and TP Defendants VANESSA L.

HAMMER ESQ, KAREN V. PAIGE ESQ, CANDACE L. MEYERS ESQ and DETECTIVE

RYAN MCENERNEY states as follows:

## PRELIMINARY STATEMENT

1.      During the pendency of these proceedings, Respondent Jane F. Girard has engaged in numerous instances of illegal harassment, tracking, surveillance and intimidation directed at TP Plaintiff Marissa Girard.

2.      While TP Plaintiff does not seek relief from all of these numerous instances of misconduct, she zeros in on two particularly egregious instances for which she has adduced significant proof to form the basis of prosecuting this action.

3.      The misconduct of Jane F. Girard is extremely serious given the extremely serious mental and physical disabilities at play. To wit, TP Plaintiff suffers from interstitial cystitis, a debilitating condition that can render her unable to leave home in part due to the constant need to urinate, particularly when exacerbated by stress. She also suffers from PTSD, which is aggravated by environmental stress and anxiety and in turn worsens her physical symptoms under interstitial cystitis.

## PARTIES

4.      **TP Plaintiff Marissa Girard** is the wife of Petitioner Kenton Girard.

5.      **Counterclaim Defendant Jane F. Girard** (herein, "Jane") is the Respondent under these proceedings.

6.      **TP Defendant Vanessa L. Hammer** was the GAL under these proceedings until she sought court approval to resign from such appointment on July 25 2023.

7.      **TP Defendant Karen V. Paige Esq** is a member of Jane's legal team.

8.      **TP Defendant Candace L. Meyers Esq** is a member of Jane's legal team.

9.      **Detective Ryan McEnerney** at all times in question served as the lead detective for the Village of Glencoe Public Safety Department.

## THE ILLEGAL RECORDING

10.     In the last two years, TP Plaintiff has experienced extreme embarrassment and humiliation from the dissemination of the contents of private conversations she has had with various persons, both connected and unrelated to these proceedings. Upon information and belief, Jane F. Girard is responsible for a long-running campaign of eavesdropping against TP Plaintiff likely motivated by her animus against TP Plaintiff for being married to Kenton Girard.

11.     On January 16 2023, Jane F. Girard recorded an in-person conversation – lasting about 30 minutes and presumably employing Jane's iPhone – involving Marissa Girard (without TP Plaintiff's knowledge or consent) while TP Plaintiff was inside a private exam room of her doctor's office located at 542 Lincoln Ave in Winnetka.

12.     This illegal recording came on the heels of an event on December 9 2022 wherein Jane F. Girard recorded a telephone conversation with Kenton Girard and their minor children without their knowledge.

13.     The proof of the illegal recording noted above on January 16 2023 was raised wherein Jane's counsel hereunder shared on July 20 2023 the responsive documents obtained under a subpoena they had issued to the erstwhile GAL Vanessa Hammer.

14.     Under those responsive documents, in fact, TP Plaintiff came to learn that recordings of her made without her consent or knowledge and wherein she had a legal expectation of privacy had been shared by Jane with (minimally) Vanessa Hammer as well as Jane's attorneys Candace L. Meyers Esq and Karen V. Paige Esq.

15.     Upon information and belief, Defendants Hammer and Paige and Meyers proceeded to disseminate – again without the knowledge or consent of TP Plaintiff – the illicitly obtained recording of TP Plaintiff with (a) the erstwhile child representative under these

proceedings, Joel J. Levin Esq as well as other members of his practice Levin & Associates, (b) Eric Pfanestiel Esq and other members of his practice Jackson Buckley & Pfanenstiel LLP, (c) Joe O'Brien Esq and other members of his practice Opal O'Brien LLC, (d) the custody evaluator Phyllis Amabile MD, (e) Gwenn Waldman and other members of her firm Breakthrough Family Solutions, as well as other family law functionaries and other persons connected with these proceedings.

16.     The law in Illinois provides for punishment as a Class 4 or Class 3 felony. For the purposes of these claims, as codified under 720 ILC 5/14-2 et seq., Crossclaim Defendant Jane F. Girard bears civil liability for using an eavesdropping device in a surreptitious manner, and TP Defendants Hammer, Paige and Meyers also bear civil liability for sharing that recording which they knew or reasonably should have known was obtained from a private conversation.

17.     TP Plaintiff has further been harmed wherein (a) she experienced a traumatic worsening of her PTSD and interstitial cystitis symptoms after learning of the criminal eavesdropping which had victimized her, (b) she was forced to invest significantly in time and money in an overhaul of her personal security and anti-surveillance measures, and (c) she must deal with fallout from the indignity of the widespread disclosure of that illegal recording and she now lives with a sense of fear and anguish relating to the event and the prospect of having her private communications recorded and disclosed widely again.

<u>**THE ILLEGAL ELECTRONIC VEHICLE TRACKING**</u>

18.     On or around January 2024, Jane became aware that Petitioner Kenton Girard had purchased a new Subaru automobile specifically for use both by TP Plaintiff and by Kenton's minor children Gw and Gr. Within one week of taking possession of the vehicle, the car prominently displayed a badge for the New Trier swim team (wherein the minor children Gw and

Gr are both swimmers for New Trier High School, where they are Honor Roll students) as well as a New Trier High School parking decal.

19.     On March 11 2024, Petitioner Kenton Girard emailed Jane stating that he and the girls would be out of town for a trip March 27 2024 through April 1 2024. During that trip Jane made an unauthorized visit to Petitioner Kenton Girard's home at 965 Forestway Drive in Glencoe, where he TP Plaintiff and the minor children reside. During this visit, Jane emplaced an Apple Air Tag on the undercarriage of the new Subaru near the trunk.

20.     Upon information and belief, Jane does not dispute her visit to Petitioner's home during the aforedescribed trip, having admitted to delivering belated birthday gifts for her minor children Gw and Gr, twins who share the birthday of February 15.

21.     On April 4 2024, TP Plaintiff and Petitioner and the minor children received notifications on their mobile phones that an unidentified Apple Air Tag had been tracking the movements of the new Subaru vehicle.

22.     On April 5 2024, TP Plaintiff and Petitioner received the same notification for a second time. Using an audible chirp locate feature, TP Plaintiff and Petitioner proceeded to visually locate the Apple Air Tag on the undercarriage of the new Subaru near the trunk.

23.     Immediately thereupon, TP Plaintiff and Petitioner proceeded to take the Subaru vehicle to the Village of Glencoe police station, wherein a report was filed and photo/video evidence was taken. Security camera footage from TP Plaintiff's home wherein Jane could be observed loitering in the physical vicinity of the Subaru vehicle was provided to Detective Ryan McEnerney. It seemed certain that criminal charges would be forthcoming against Jane.

24.     In the ensuing days, the minor children Gw and Gr observed Jane physically following them on their typical daily route to New Trier High School, and TP Plaintiff observed

Jane physically following her at her typically weekly run to Mariano's grocery store at 784 Skokie Blvd in Northbrook.

25.    On April 15 2024, Detective Ryan McEnerney contacted TP Plaintiff and Petitioner, stating that he had issued a warrant to Apple to obtain information about the illegally installed Air Tag from the undercarriage of the Subaru vehicle which had been placed into evidence for the criminal investigation.

26.    On April 26 2024, TP Plaintiff contacted Apple and received confirmation that identifying/billing information for the Air Tag in evidence had been provided to Detective Ryan McEnerney. Repeated attempts to stimulate Detective McEnerney to take action against Jane were made without success in the following weeks.

27.    TP Plaintiff and Petitioner hired Attorney Peter C. Godwin for the limited purpose of ensuring that Detective Ryan McEnerney followed through with criminal charges against Jane. On May 7 2024, Detective McEnerney told Attorney Godwin that he had spoken with Jane's female attorney and did not plan to charge Jane, because they were "in no danger." On May 15 2024, Detective McEnerney provided an update that Jane F. Girard refused to speak with the police about the Air Tag incident, asserting her Fifth Amendment Right against self-incrimination[1].

28.    Upon information and belief, Detective Ryan McEnerney received information under the warrant issued to Apple positively identifying Jane F. Girard as its purchaser and/or registered user. Despite such information and the security camera footage showing Jane lingering

---

[1] Crossclaim Defendant Jane F. Girard has a documented history of asserting her Fifth Amendment right against self-incrimination. When DCFS opened an investigation into Ms. Girard for a second time on July 22 2023 involving Cook County ASA Mary Stein, Jane F. Girard retained Ms. Jennifer Hansen of Hansen & Cleary LLC in Northbrook as her criminal defense counsel. On September 7 2023, Ms. Hansen informed the DCFS that Jane would be asserting her right against self-incrimination and thus not be making a statement or providing any testimony to the DCFS. For the purposes of a civil proceeding, as here, the Court must operate under the presumption that Jane has admitted to illegal surveillance via Air Tag as to TP Plaintiff.

near the Subaru vehicle at TP Plaintiff's residence during the time in question, Detective McEnerney stubbornly refused to file criminal charges against Jane F. Girard.

29.     The improper refusal by Detective McEnerney and the police in the Village of Glencoe to properly investigate and charge crimes against women and girls is already substantially explored under *Kenton Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois under which Detective Ryan McEnerney is a defendant. It would appear that Detective McEnerney's improper refusal to prosecute Jane's illegal surveillance here – victimizing female victims again, namely TP Plaintiff and the minor children Gw and Gr – is part of a larger and disturbing pattern[2].

30.     Use of electronic tracking devices (such as Apple Air Tags) on vehicles is actionable as a Class A Misdemeanor, under 720 ILCS 5/21-2.5. However, under the current state of affairs, Jane F. Girard has learned that she can engage in illegal electronic tracking of TP Plaintiff and the minor children Gw and Gr without being held to account for her criminal conduct. Both the reality of Jane F. Girard's illegal conduct and the likelihood of her recidivism – thanks to Detective Ryan McEnerney's dereliction of his investigative and charging duties – has caused extreme stress and mental anguish to TP Plaintiff.

31.     In the aftermath of learning about the illegal Apple Air Tag emplacement on the Subaru vehicle she shares with minor children Gw and Gr, TP Plaintiff experienced a serious setback in her medical treatment for interstitial cystitis and PTSD, wherein she has been experiencing ongoing and debilitating symptoms under both conditions through today's date.

32.     In addition to being forced to live in a state of constant fear about being surveilled

---

[2] What is even more egregious is that Detective Ryan McEnerney is accused of taking a cash bribe from Attorney Kathryn Ciesla Esq in early August 2023 to declare that child sexual assault charges against Jane F. Girard were "unfounded". One has to wonder whether Mr. McEnerney was bribed by Jane's counsel here wherein he spoke with a "female attorney" for Jane F. Girard and directly thereafter the investigation took a proverbial "U Turn" towards the same "unfounded" disposition.

by Jane F. Girard, TP Plaintiff has incurred significant additional expense to hire electronic surveillance sweeping services, anti-surveillance technology and a robust upgrade to her home security and monitoring systems and services.

**COUNT I - EAVESDROPPING**
*Jane F. Girard, Vanessa L. Hammer, Karen V. Paige, Candace L. Meyers*

33.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

34.     Under 720 ILCS 5/14-6, TP Plaintiff is entitled to injunctive relief prohibiting further eavesdropping as well as actual and punitive damages.

35.     As previously alluded, Jane F. Girard is civilly liable for doing the eavesdropping, while Defendants Hammer, Paige and Meyers are liable for disseminating the illegal recording.

**COUNT II - NEGLIGENCE**
*Jane F. Girard, Detective Ryan McEnerney*

36.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

37.     Defendant Jane F. Girard breached her duty to not violate the law in our state regarding the electronic tracking of vehicles. As a result of these actions, TP Plaintiff has experienced significant economic and non-economic damages which continue to accrue through today's date.

38.     When presented with (a) identifying details for the illegal Air Tag from Apple positively identifying Jane F. Girard as the purchaser and/or the registered user returned under the warrant or subpoena issued to Apple, and (b) video footage from security camera footage from TP Plaintiff's home as to Jane F. Girard lingering near the Subaru vehicle during the family trip when no one was present at TP Plaintiff's home, Detective Ryan McEnerney had an affirmative obligation to recommend criminal charges against Jane F. Girard.

39.     As a direct result of Detective McEnerney's deliberate choice to not pursue criminal charges against Jane F. Girard thereunder, TP Plaintiff has experienced significant

economic and non-economic damages which continue to accrue through today's date.

## PRAYER FOR RELIEF

WHEREFORE, the Third Party Respondent Marissa Girard prays the Court grant the following relief:

1) Issue an injunction with a liquidated damages penalty of $10,000 per occurrence per party against the Count I Defendants from further eavesdropping against TP Plaintiff and from further dissemination of materials obtained from illegal recordings of TP Plaintiff in violation of our state's laws against eavesdropping;

2) Award TP Plaintiff compensatory damages in an appropriate amount greater than $100,000 and punitive damages;

3) Enter judgment in favor of Plaintiffs and against Defendants and for such other relief as this Court deems appropriate.

## JURY DEMAND

Third Party Respondent Marissa Girard hereby demands a trial by jury on all issues of fact and damages stated herein.

DATED: December 15, 2024               Respectfully submitted,

                                       MARISSA GIRARD

                            By:    */s/ Marissa Girard*
                                   965 Forestway Drive
                                   Glencoe, IL 60022
                                   marissadakis@gmail.com
                                   Tel: 773-425-4393

## CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 15th day of December 2024 by email to Petitioner and Respondent, on their attorneys of record. A copy of the foregoing was also transmitted to the office of Hon. Scannicchio via the below-listed points of contact.

**Hon. Regina A. Scannicchio**
Presiding Judge of Domestic Relations Division
ccc.domrelcr1905@cookcountyil.gov

**Adam P. Monreal Esq.**
Chief Deputy Clerk for Hon. Scannicchio
apmonreal@cookcountycourt.com

**Jaime A. Barcas**
Executive Assistant for Hon. Scannicchio
jaime.barcas@cookcountyil.gov

*/s/ Marissa Girard*
Marissa Girard

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

JANE F. GIRARD,                           )
                                          )
                    Plaintiff,            )
vs.                                       )        Calendar 1
                                          )
KENTON GIRARD and                         )        Case No. 2015-D-009633
MARISSA GIRARD,                           )
                                          )
                    Defendants.           )
--- --- --- --- --- --- ---               )
KENTON GIRARD,                            )
                                          )
                    Crossclaim Plaintiff, )        **Crossclaims of Kenton Girard**
vs.                                       )        **Directed at Marissa Girard**
                                          )        **& Jury Demand**
MARISSA GIRARD,                           )
                                          )
                    Crossclaim Defendant. )
--- --- --- --- --- --- ---               )
MARISSA GIRARD,                           )
                                          )
                    Counterclaim Plaintiff )
                    and Third Party Plaintiff )
vs.                                       )
                                          )
JANE F. GIRARD,                           )
                                          )
                    Counterclaim Defendant, )
                                          )
VANESSA L. HAMMER ESQ,                    )
KAREN V. PAIGE ESQ,                       )
CANDACE L. MEYERS ESQ and                 )
DETECTIVE RYAN MCENERNEY,                 )
                                          )
                    Third Party Defendants. )

## CROSSCLAIMS OF KENTON GIRARD DIRECTED AT MARISSA GIRARD

**NOW COMES** Defendant  KENTON GIRARD, in pro se, and in support of his

Crossclaims against Codefendant MARISSA GIRARD, hereby states as follows:

## INTRODUCTION

1.      Plaintiff Jane F. Girard has been divested of her parental rights and her right to seek a custody remedy because she is an admitted child sex abuser and rapist, yet these amorphous proceedings which she improperly incepted three years ago *without pleadings*[1] appear to advance towards an effective "mystery trial". According to open court testimony on February 14 2025[2] by Beermann LLP Attorney Enrico J. Mirabelli – counsel for Jane F. Girard – the "mystery trial" (devoid of a criminal investigation, a state prosecutor, a true indictment, a bill of charges, a jury of twelve peers or even a criminal tribunal) will consist in a criminal contempt proceeding against Defendant Kenton Girard and his wife Defendant Marissa Girard, who is a disabled person.

2.      Marissa Girard is at this time litigating claims in pro se in the Northern District of Illinois under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136 ("Civil Rights Lawsuit") against *inter alia* Beermann LLP attorneys Enrico J. Mirabelli and Matthew D. Elster, as well as some of the judicial officers who have presided hereunder. Among other causes of action, her claims speak to violations of her constitutional rights, including those arising under the First and Sixth Amendments, as well as her rights under federal law including Title II of the Americans with Disabilities Act ("ADA").

## PARTIES

3.      Crossclaim Plaintiff Kenton Girard is the biological father of the minor children Gwen Girard and Grace Girard, fraternal twins both now age 17.

---

[1] Numerous filings hereunder by Kenton Girard and Marissa Girard have addressed the lack of pleadings filed by Plaintiff Jane F. Girard. Egregiously, Marissa Girard – who neither has parenting responsibilities nor any biological connection to the minor children Gwen and Grace – has been forced to endure a dozen or more inexplicable, harassing and abusive motions to hold her in contempt or to jail her filed by Beermann LLP on behalf of Jane F. Girard without ever having been actioned with a pleading at the time of her (deficient) joinder in plain violation of 735 ILCS 5/2-201(a).

[2] Notably, Mr. Mirabelli's Sixth Amendment offending testimony was reduced to a written transcript by a court reporter present on February 14 2025.

4.      Crossclaim Defendant Marissa Girard is Kenton Girard's wife of approximately ten years, and she is a disabled person who suffers from PTSD and interstitial cystitis, both of which are ADA qualifying disabilities. Kenton and Marissa are married and reside together in Glencoe full-time together with the minor children.

## THE POST-NUPTIAL INDEMNIFICATION AGREEMENT

5.      Since the inception of the marriage between Kenton and Marissa about a decade ago, Jane F. Girard has continuously interfered – whether by stalking Marissa in her automobile, saying terrible things about Marissa to the minor children, saying terrible things about Kenton to the minor children, attempting to gain access to electronic devices belonging to Kenton and Marissa and the cell phones utilized by the minor children – in order to try to create friction between Kenton, Marissa and the minor children.

6.      In the summer of 2021, Marissa Girard's disabilities started to take a turn for the worse wherein the frequency of medical consultations and doctor visits increased due to flare ups typically connected with environmental stress. Anecdotally, it seems much of this environmental stress was owing to non-stop efforts by Jane F. Girard to cause problems as described above.

7.      Indeed, at that time, Marissa strongly blamed Jane F. Girard for many of the bouts of stress – which would in turn cause debilitating flare ups under PTSD and interstitial cystitis – that she was experiencing during the summer of 2021.

8.      Accordingly, Marissa articulated her wish for a financial security blanket to kick in under the circumstances in which Jane F. Girard might potentially engage in a course of conduct (such as stalking Marissa) under which Marissa would experience stress as a result and wherein Marissa might have to resort to the legal system to end the offending course of conduct by Jane F. Girard.

9.      During the course of several conversations, Kenton gradually became incrementally more agreeable to the concept. However, in an effort to more sharply define the concept of stress-inducing course of conduct, Kenton and Marissa decided on the following language ("Legal Billings Clause"):

> If any course of action undertaken by Jane Girard proximately causes a violation of Marissa Girard's rights secured under the Constitution or under federal law, then Kenton Girard will indemnify Marissa from all necessary and reasonable legal billings incurred to address said violation(s), as long as Kenton and Marissa are married and residing together for more than seven days per month.

The purpose of this language was to ensure that not just any "trivial" everyday friction caused by Jane F. Girard would qualify for indemnification, but rather more serious interference would be captured by the agreement.

10.     There was an additional type of "peace of mind" additionally desired by Marissa Girard, namely if Marissa's disabilities were to become debilitating in the future, or to prevent her from fully engaging in normal daily life activities, she wanted to ensure that Kenton would be agreeable to subsidizing her in the case under which her earnings noticeably suffered from her disabilities. They settled on the following language ("Earnings Subsidization Clause"):

> If Marissa's earnings were to worsen in the future as a direct result of her disabilities, wherein Marissa's gross earnings were to decline below $4,000 per month then Kenton Girard would agree to subsidize her earnings to ensure Marissa received $4,000 per month, as long as Kenton and Marissa are married and residing together for more than seven days per month.

The purpose of this language was to provide a measure of financial peace of mind, without excessively burdening Kenton.

11.     Kenton and Marissa eventually executed their "Post-Nuptial Indemnification Agreement" on October 1 2021 containing the exact operative language excerpted *supra*.

## DISPUTES ARISE OVER THE AGREEMENT

12.     As mentioned *supra*, Marissa Girard is pursuing relief for purported violations of various of her constitutional rights and her rights to reasonable accommodation under Title II of the Americans with Disabilities Act. Marissa claims her legal filings are a direct result of Jane F. Girard joining Marissa as a defendant hereunder, pursuant to a summons dated May 26 2023.

13.     To rectify the violations of her rights, Marissa has prepared and filed pleadings under the Civil Rights Lawsuit, and she is litigating that matter capably pro se. From Kenton's point of view there is no need for an attorney to take over that litigation for Marissa. She is also handling the instant matter pro se, including her claims filed against Jane F. Girard and various third party defendants on March 5 2025 related to illegal eavesdropping and electronic tracking committed by Jane F. Girard and directed at Marissa.

14.     However, Marissa feels that it is necessary not only for an attorney to take over her Civil Rights Lawsuit but her litigation under the instant matter. Kenton and Marissa are at a stalemate on this issue and things came to a head in the last week of April 2025.

15.     Additionally Marissa's earnings have declined in accordance with the Earnings Subsidization Clause and demands subsidization as to her reduced earnings, however Kenton does not feel that such decline is directly owing to her disabilities, but rather to the time she has been spending on litigation activities.

## COUNT I – LEGAL BILLINGS CLAUSE

16.     Crossclaim Plaintiff Kenton Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

17.     The claims under the Civil Rights Lawsuit have not yet been adjudicated, so there is no finding as of yet that Marissa's constitutional rights – or her rights under the ADA – have

been violated. As a result, it is premature to hold Plaintiff accountable for her legal fees.

18.     Moreover, as Marissa has demonstrated, she is capable of handling pleadings, litigation and even court dates pro se. As a result, hiring attorneys to take over the Civil Rights Lawsuit and her representation hereunder is not necessary.

## COUNT II – EARNINGS SUBSIDIZATION CLAUSE

19.     Crossclaim Plaintiff Kenton Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

20.     Cross Plaintiff Kenton Girard believes the decline in her earnings is directly owing to the time Marissa has spent on these proceedings.

21.     As such, the disabilities are not the proximate cause of the decline in earnings.


**WHEREFORE** Crossclaim Plaintiff Kenton Girard requests that the Court enter two declaratory judgments finding that (a) the Legal Billings Clause does not hold Kenton accountable for her legal fees, because the violations have not yet been adjudicated; nor are the legal fees necessary given that Marissa has been competently handling the litigation hereunder and under the Civil Rights Lawsuit pro se, and (b) the Earnings Subsidization Clause has not been triggered because the direct cause of Marissa's lowered earnings is the time she has spent on this litigation, not her disabilities, and for such further relief as appropriate.


DATED: April 28 2025             Respectfully submitted,


                          KENTON GIRARD

By:    */s/ Kenton Girard*
        965 Forestway Drive
        Glencoe, IL 60022

kg5252@yahoo.com
Tel: 773-575-7035

## CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was electronically filed with the

Clerk of this Court and was served this 28th day of April 2025 by email to the attorneys who

have entered their appearances hereunder. A copy of the foregoing was also transmitted to the

office of Hon. Scannicchio via the below-listed points of contact.

**Hon. Regina A. Scannicchio**
Presiding Judge of Domestic Relations Division
ccc.domrelcr1905@cookcountyil.gov

**Jaime A. Barcas**
Executive Assistant for Hon. Scannicchio
jaime.barcas@cookcountyil.gov

/s/ *Kenton Girard*
Kenton Girard

## JURY DEMAND

Crossclaim Plaintiff Kenton Girard hereby demands a trial by jury on all issues of fact
stated herein.

## CONSENT TO A FEDERAL FORUM

Under penalties as provided by law pursuant to Sec. 1-109 of the Code of Civil Procedure, the
undersigned certifies that he freely consents to litigating these proceedings in a federal forum,
should the court or any party wish to move these proceedings to federal court.

/s/ Kenton Girard
April 28, 2025

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
  to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
10/28/2025 5:26 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 89
35101306

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | |
|---|---|
| JANE F. GIRARD, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Calendar 89 |
| | ) |
| KENTON GIRARD and | ) Case No. 2015-D-009633 |
| MARISSA GIRARD, | ) |
| | ) |
| Defendants. | ) |
| ___  ___  ___  ___  ___  ___ | ) |
| KENTON GIRARD, | ) |
| | ) |
| Crossclaim Plaintiff, | ) **Answer to Cross Claims** |
| vs. | ) **of Defendant Kenton Girard** |
| | ) **& Jury Demand** |
| MARISSA GIRARD, | ) |
| | ) |
| Crossclaim Defendant. | ) |
| ___  ___  ___  ___  ___  ___  ___ | ) |
| MARISSA GIRARD, | ) |
| | ) |
| Counterclaim Plaintiff | ) |
| and Third Party Plaintiff | ) **2015D009633** |
| vs. | ) |
| | ) |
| JANE F. GIRARD, | ) |
| | ) |
| Counterclaim Defendant, | ) |
| | ) |
| VANESSA L. HAMMER ESQ, | ) |
| KAREN V. PAIGE ESQ, | ) |
| CANDACE L. MEYERS ESQ, | ) |
| JOHN M. D'ARCO ESQ, | ) |
| ENRICO J. MIRABELLI ESQ, | ) |
| MATTHEW D. ELSTER ESQ, and | ) |
| DETECTIVE RYAN MCENERNEY, | ) |
| | ) |
| Third Party Defendants. | ) |

**ANSWER TO CROSS CLAIMS OF KENTON GIRARD**

**NOW COMES** Defendant MARISSA GIRARD (herein, "MG"), via her undersigned

counsel, and answers as follows to the Cross Claims filed by Defendant Kenton Girard:

## INTRODUCTION

1.      MG believes that Plaintiff Jane F. Girard's various Fifth Amendment allocutions under questioning by law enforcement as to her apparent long-running sexual abuse of the minor children hereunder constitute strong evidence that she has been divested of any right to pursue a judicial order of custody. MG admits that she was never actioned with a pleading in this matter, in violation of 735 ILCS 5/2-201(a) and in violation of her constitutional rights to fair notice and due process. MG admits that Beermann LLP attorneys Enrico J. Mirabelli and Matthew D. Elster have described their desired trial in this matter as a criminal trial against MG and Defendant Kenton Girard both in open court on February 14 2025 and per the updated Trial Order (which was duly prepared by Beermann LLP without any input whatsoever from the undersigned counsel) and dated *nunc pro tunc* as of October 7 2025.

2.      MG admits that she filed the federal lawsuit *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136 ("Civil Rights Lawsuit") against *inter alia* Beermann LLP attorneys Enrico J. Mirabelli and Matthew D. Elster, as well as some of the judicial officers who have presided hereunder including the current judicial officer Hon. William Yu, in response to violations of her constitutional rights, including those arising under the First and Sixth Amendments, as well as her rights under federal law including Title II of the Americans with Disabilities Act ("ADA"). MG admits that Hon. William Yu is her litigation adversary and clearly disqualified to preside hereunder pursuant to Judicial Canon 2.11.

## PARTIES

3.      MG admits that Kenton Girard is the ex-husband of Plaintiff Jane F. Girard and biological father of the minor children hereunder.

4.     MG admits that she is Kenton Girard's wife of approximately ten years, and she is a disabled person who suffers from PTSD and interstitial cystitis, both of which are ADA qualifying disabilities. MG admits that she resides with Kenton together in Glencoe full-time together with the minor children hereunder.

## THE POST-NUPTIAL INDEMNIFICATION AGREEMENT

5.     MG admits that Plaintiff Jane F. Girard has continuously interfered in her marital relationship with Kenton Girard in order to try to create friction between Kenton, Marissa and the minor children.

6.     MG admits that starting in the summer of 2021 her disabilities started to take a turn for the worse wherein the frequency of medical consultations and doctor visits increased due to flare ups typically connected with environmental stress. MG affirmatively blames Plaintiff Jane F. Girard in large part for the worsening of her symptoms during this time period.

7.     MG admits that she blamed Plaintiff Jane F. Girard for significant flare-ups of stress during the summer of 2021.

8.     MG admits that in summer of 2021 she became extremely concerned about the possibility of Jane F. Girard potentially stalking or harassing MG forcing MG to resort to the legal system (and to pay for necessary legal expenses and attorneys fees) to end the offending course of conduct by Jane F. Girard.

9.     MG admits that in summer 2021 she negotiated with Kenton Girard a "Legal Billings Clause" to be included in a postnuptial agreement with the following language:

> If any course of action undertaken by Jane Girard proximately causes a violation of Marissa Girard's rights secured under the Constitution or under federal law, then Kenton Girard will indemnify Marissa from all necessary and reasonable legal billings incurred to address said violation(s), as long as Kenton and Marissa are married and residing together for more than seven days per month.

MG admits that the purpose of the Legal Billings Clause was to ensure that only serious interference in her relationship with Kenton Girard would be captured by the agreement.

10. MG admits that in summer 2021 she negotiated with Kenton Girard an "Earnings Subsidization Clause" to protect her financially in the event that her earnings were to noticeably suffer as a result of the worsening of her disabilities to be included in a postnuptial agreement with the following language:

> If Marissa's earnings were to worsen in the future as a direct result of her disabilities, wherein Marissa's gross earnings were to decline below $4,000 per month then Kenton Girard would agree to subsidize her earnings to ensure Marissa received $4,000 per month, as long as Kenton and Marissa are married and residing together for more than seven days per month.

MG admits that the purpose of this language was to provide a measure of financial peace of mind for MG, without excessively burdening Kenton.

11. MG admits that she and Kenton Girard executed their "Post-Nuptial Indemnification Agreement" on October 1 2021 containing the exact operative language excerpted *supra*.

### DISPUTES ARISE OVER THE AGREEMENT

12. MG admits that she is pursuing relief for violations of various of *inter alia* her constitutional rights and her rights under the Americans with Disabilities Act. MG admits that these injuries devolved from Plaintiff Jane F. Girard serving her with a summons dated May 26 2023 – but no pleading – in this matter.

13. MG admits that she seeks redress for the constitutional and other torts under her Civil Rights Lawsuit. MG admits that she was pro se hereunder most of the time. However, she is currently represented by the undersigned counsel. MG denies she feels competent to represent herself hereunder pro se, and indeed she points out that the undersigned counsel represents her.

14. MG admits that she and Kenton Girard have differing views on the utility and

necessity of her retaining legal representation under the Civil Rights Lawsuits and under the instant proceedings and that such differences came to a head in April 2025.

15.     MG admits that her earnings have declined recently but denies that her disabilities are not the cause of her decreased earnings.

## COUNT I – LEGAL BILLINGS CLAUSE

16.     MG incorporates by reference her responses to the preceding paragraphs as if fully set forth herein.

17.     MG admits that the claims under the Civil Rights Lawsuit have not yet been fully adjudicated to the entry of judgment, but denies that complete adjudication is a necessary predicate to establish coverage under the Legal Billings Clause. MG further denies that it is premature for Kenton Girard to commence paying for her reasonable and necessary legal expenses under all matters devolving from her interactions with Jane F. Girard.

18.     MG denies that her hiring of attorneys under the various matters devolving from her interactions with Jane F. Girard is not reasonable and necessary.

## COUNT II – EARNINGS SUBSIDIZATION CLAUSE

19.     MG incorporates by reference her responses to the preceding paragraphs as if fully set forth herein.

20.     MG denies that the decline in her earnings is directly owing to the time she has spent on these proceedings.

21.     MG denies that her disabilities are not the proximate cause of decreased earnings.

## AFFIRMATIVE DEFENSES

**I.**     Kenton Girard fails to state a cause of action for Count I.

**II.**    Kenton Girard fails to state a cause of action for Count II.

**III.**   Kenton Girard's claims are barred in whole or in part because Kenton Girard is estopped from asserting his claims.

**IV.**    Kenton Girard's claims are barred in whole or in part by the doctrine of laches.

**WHEREFORE**, MG demands that judgment be entered in her favor, and that she be awarded attorneys' fees and costs and such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

Cross Claim Defendant/Counterclaim Plaintiff MARISSA GIRARD, sues Plaintiff/Counterclaim Defendant, JANE F. GIRARD, and Third Party Defendants JOHN M. D'ARCO ESQ, ENRICO J. MIRABELLI ESQ and MATTHEW D. ELSTER ESQ, and hereby allege as follows:

## PARTIES

1.     This is a civil action for declaratory relief and monetary damages[1].

2.     Counterclaim Plaintiff Marissa Girard is the current wife for ten years of Kenton Girard (the ex-husband of Jane F. Girard) and is a Hispanic/Latinx disabled person who has

---

[1] Counterclaim Plaintiff is filing these limited Counterclaims in an attempt to bring this matter before the Court and mitigate her damages, which are extraordinary, and continue to grow and accrue by the day. Such damages, well into the eight figures, are a direct result of the willful and intentional mis-joinder of Counterclaim Plaintiff **without a pleading**, which Jane F. Girard and her attorneys likely expected would result – due to Counterclaim Plaintiff's documented affliction with extreme PTSD – in Kenton Girard's quick acquiescence to their onerous settlement terms. These claims are specifically raised in addition to Counterclaim Plaintiff's already-filed counterclaims and third party claims against Jane F. Girard, Vanessa L. Hammer, Karen V. Paige Esq, Candace L. Meyers Esq, and Village of Glencoe Detective Ryan McEnerney which were filed with the clerk and duly accepted by the court on March 5 2025.

suffered from two separate ADA-recognized disabilities for many years, namely post-traumatic stress disorder ("PTSD") and interstitial cystitis, both of which conditions are highly susceptible to aggravation by environmental stress. She also runs a psychotherapy/counseling practice.

3.  Counterclaim Defendant Jane F. Girard is the person who incepted these post-decree proceedings on or around March 2022 wherein she sought the appointment of a Parenting Coordinator.

4.  TP Defendant John M. D'Arco Esq is the managing partner of Beermann LLP, and under this role is wholly responsible for all litigation strategy and decisions undertaken on behalf of Jane F. Girard in these proceedings. Pursuant to the August 12 2025 memorandum opinion of District Judge Rebecca Pallmeyer under *Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois, Mr. D'Arco will be sitting for a re-filed Civil RICO lawsuit as soon as the plaintiffs in that matter – the minor children hereunder – attain majority in February 2026. **Exhibit A.**

5.  The decision by District Judge Pallmeyer to greenlight the Civil RICO lawsuit is *extremely significant*, because the pattern of racketeering relied upon in that federal lawsuit involves (a) systematic bribery of judicial officers in the Cook County Domestic Relations Division, and (b) pervasive and never-ending violations of the Hobbs Act as codified under 18 U.S.C. § 1951 wherein the modus operandi of Beermann LLP in its family court cases is to engage in criminal extortion of their adversaries. As illuminated in the pleading ruled upon by District Judge Pallmeyer, both bribery and extortion predicates have manifested in this case.

6.  Put differently, Mr. D'Arco and his confederates are alleged to have subverted these proceedings by bribery and extortion, and a federal judge (not just any judge – the chief judge of the Northern District of Illinois known for her anti-corruption victories attained over

decades in public service) has reviewed those pleadings for the better part of twelve months and decided, upon careful consideration, that the case against Mr. D'Arco and his confederates for Civil RICO warrants further litigation as soon as this custody proceeding terminates.

7.     To put it mildly, these proceedings taken as a whole do not carry the force of law. Quite the contrary, these proceedings constitute nothing short of a criminal conspiracy in which Mr. D'Arco has been puppeteering the actions and decisions undertaken by the judicial officers, all the while running up wanton and unreasonable legal fees and billings which have served no constructive purpose under the IMDMA or in furtherance of the best interests and well-being of the minor children, who are apparent victims of long-running sexual abuse by their biological mother Plaintiff Jane F. Girard.

8.     TP Defendant Enrico J. Mirabelli Esq is a senior partner of Beermann LLP who has been quarterbacking nearly all litigation decisions hereunder since the inception of these post-decree proceedings. Nearing age 70, Mr. Mirabelli has vast experience as a family court practitioner in Cook County. Mr. Mirabelli is also a defendant under the Civil RICO lawsuit, wherein the operative pleadings detail his essential and long-running role and responsibility in both the judicial bribery and extortion predicates, including overt acts manifesting in this very proceeding.

9.     TP Defendant Mirabelli is also actively defending against two other related federal lawsuits under (a) *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, N. Dist. Illinois in which he stands accused of a litany of violations relating to Counterclaim Plaintiff's mis-joinder in this custody case, as well as (b) *Minor Child Gw et al. v. Scannicchio et al.*, Civil Action No. 1:25-cv-04551, N. Dist. Illinois in which he stands accused of causing significant harms to the minor children hereunder by sustaining this illegitimate custody case beyond

statutory time limits and with callous disregard for their plight given the history of the alleged sexual abuse by their biological mother (and Beermann LLP client) Jane F. Girard.

10. TP Defendant Matthew D. Elster Esq is a senior partner of Beermann LLP who has been increasingly involved in quarterbacking nearly all litigation decisions hereunder – and personally drafting nearly all court orders and goading the judicial officers to make unlawful decisions including without jurisdiction – under these post-decree proceedings. What is particularly heinous about TP Defendant Elster is that, as an active member of the bar of SCOTUS and an experienced appellate lawyer in Illinois, he knows better than to engage in wrongful and illegal conduct.

11. TP Defendant Elster is also actively defending against two other related federal lawsuits under (a) *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, N. Dist. Illinois in which he stands accused of a litany of violations relating to Counterclaim Plaintiff's mis-joinder in this custody case, as well as (b) *Minor Child Gw et al. v. Scannicchio et al.*, Civil Action No. 1:25-cv-04551, N. Dist. Illinois in which he stands accused of causing significant harms to the minor children hereunder by sustaining this illegitimate custody case beyond statutory time limits and with callous disregard for their plight given the history of the alleged sexual abuse by their biological mother (and Beermann LLP client) Jane F. Girard.

## FACTUAL BACKGROUND

12. Over a year after she initiated these post-decree proceedings, Counterclaim Defendant Jane F. Girard hatched a plan with her attorneys at Beermann LLP to join Counterclaim Plaintiff hereunder, knowingly without any legitimate reason to do so, and furthermore **without a pleading** in violation of 735 ILCS 5/2-201(a) and her constitutional rights to fair notice and due process. Indeed this defective joinder of Counterclaim Plaintiff was

calculated for maximum harassment and intimidation value and represents part of a long-running pattern under which Jane F. Girard has been seeking to exact her revenge on Counterclaim Plaintiff for marrying her ex-husband Kenton Girard.

13.     To wit, since at least Summer 2021, Jane F. Girard had been ostentatiously and aggressively interfering in Cross Claim Plaintiff's marital relationship with Kenton Girard, such as by engaging in illegal eavesdropping and illegal electronic tracking (both of which causes of action are detailed in Cross Claim Plaintiff's previous counterclaims filed and approved by the court on March 5 2025), engaging in defamation against Counterclaim Plaintiff and her psychotherapy/counseling practice, which conduct has resulted in the documented worsening of her PTSD and interstitial cystitis conditions, including without limitation symptoms of decreased locomotive capability, aphasia and acute short term memory loss. Cross Claim Plaintiff has been receiving regular and significant medical attention since such time to manage her conditions.

14.     Not only was Jane F. Girard intimately aware of Counterclaim Plaintiff's long-running medical disabilities, but upon information and belief, she believed joining Counterclaim Plaintiff under these proceedings would specifically cause great anxiety for Marissa Girard and by implication exert control over Kenton Girard. On or around June 2023, Counterclaim Plaintiff received a summons hereunder and a "Motion to Add Third Party". Notably, that motion paper did not include Counterclaim vPlaintiff in its caption, and neither did that motion paper constitute a pleading.

15.     Ever since such time, Counterclaim Plaintiff has been vocally trashing the legitimacy of sustaining her role in these proceedings – under which she has been on the receiving end of more than twenty (20) motions from Beermann LLP seeking her fining or jailing. During the past approximately thirty (30) months in which Counterclaim Plaintiff has

been illegitimately forced to participate in these proceedings, her psychotherapy and counseling practice revenues have dwindled almost to zero. Numerous requests have been made to Beermann LLP and to the court to release her from these proceedings, all to no avail. Quite the contrary, TP Defendants Mirabelli and Elster have at all times insisted in court papers and filings and open court pronouncements that Counterclaim Plaintiff is an "indispensable party" to these proceedings.

16.      Indeed, in open court on February 14 2025, attorneys Mirabelli and Elster characterized their "case in chief" in this matter as a criminal proceeding against Counterclaim Plaintiff and Kenton Girard. In case of any doubt, the recent Trial Order signed by Hon. William Yu and dated *nunc pro tunc* as of October 7 2025[2] includes a request for the court to impose custodial sentences for criminal contempt against Counterclaim Plaintiff and Kenton Girard.

17.      As is explored under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, pending before District Judge Andrea Wood, the attempts to try Counterclaim Plaintiff criminally in Hon. William Yu's Calendar 89 family court – without a jury, prosecutor, bill of charges, etc - constitute an egregious violation of Counterclaim Plaintiff's Sixth Amendment rights.

18.      TP Defendants D'Arco, Mirabelli and Elster have been repeatedly reminded – through the raising of multiple federal pleadings and heavy motion practice in federal court

---

[2] As has become thematic in this matter, dark storm clouds of illegitimacy raise questions about the legal force and effect of virtually every court order propounded in this matter. The Trial Order recently signed by Hon. William Yu was questionably executed on October 20 2025 and entered into the docket impermissibly without a Cook County e-filing stamp, thereby making appellate review of the date of filing of that order impossible. The extremely unusual delay of 17 days between the October 3 2025 court date in which Hon. William Yu pronounced the rulings comprising the Trial Order and the obtaining of his signature thereunder constitutes yet another unacceptable irregularity in these proceedings. Indeed, Hon. William Yu is not even attempting to make these proceedings appear to be unbiased and fair. He is actively defending two separate federal lawsuits filed by Counterclaim Plaintiff, Kenton Girard and the minor children – and yet he insists on presiding over these proceedings in ostentatious violation of Judicial Canon 2.11. His first act on resuming his supervisory role hereunder was to sanction Counterclaim Plaintiff for filing a motion for substitution of judge as of right – clearly using his judicial power to retaliate.

spanning three separate federal lawsuits as previously noted – that the sustaining of the instant proceedings against Counterclaim Plaintiff is calculated to cause maximum harassment and anxiety, constitutes abuse of process and violations of the Hobbs Act, and serves no lawful purpose and is not reasonably based in law or fact.

19.     Beyond all of the procedural defects already expounded, Counterclaim Plaintiff is neither a biological parent nor a party to any joint parenting agreement involving the minor children hereunder. It is beyond unreasonable to join her under these proceedings: indeed it is minimally tortious and sanctionable under Illinois Supreme Court Rule 137.

20.     As a direct result of her sustained and illegitimate joinder under these proceedings, Counterclaim Plaintiff has experienced significant anxiety, distress, depression episodes and worsening of her conditions under PTSD and interstitial cystitis necessitating escalated medical treatment which remains ongoing. Additionally, the revenues from Counterclaim Plaintiff's psychotherapy/counseling practice have dried up to nearly zero.

## COUNT I – VIOLATION OF RULE 137

21.     Counterclaim Plaintiff incorporates the statements and allegations contained in the previous paragraphs as if fully set forth herein.

22.     Rule 137 is designed "to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law." *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶41. Considering that Counterclaim Plaintiff is neither a parent nor the holder of parental rights, and given the extraordinary fact that she has not been actioned with a pleading hereunder, there is no question that her joinder and the sustaining of her participation hereunder is calculated for harassment and intimidation purposes only.

23.     Counterclaim Defendant Jane F. Girard and her attorneys TP Defendants D'Arco, Mirabelli and Elster are therefore liable for violating Illinois Supreme Court Rule 137 for propounding myriad filings, from the point of Counter Claim Plaintiff's wrongful joinder forward – including *inter alia* at least twenty motions seeking her fining or jailing.

24.     As a proximate result of these ongoing violations of Rule 137, Counterclaim Plaintiff has incurred significant economic and non-economic damages.

## COUNT II - CIVIL CONSPIRACY

25.     Counterclaim Plaintiff incorporates the statements and allegations contained in the previous paragraphs as if fully set forth herein.

26.     By manufacturing her unlawful joinder in May 2023 and sustaining her participation hereunder since such point in time over extremely loud protests and multiple federal lawsuits seeking redress for those abuses of process, Counterclaim Defendant Jane F. Girard and TP Defendants D'Arco, Mirabelli and Elster are responsible for committing the overt acts of (a) violating Supreme Court Rule 137, (b) violating Counterclaim Defendant's constitutional rights to fair notice and due process, (c) engaging in extortion calculated against Counterclaim Plaintiff and Kenton Girard, and (d) violating the Hobbs Act as codified under 18 U.S.C. § 1951.

27.     It is without question that the joinder and sustaining of Crossclaim Defendant's required participation was willful, intentional, and constituted concerted action and pursuant to a nefarious illicit plan by Jane F. Girard and her attorneys at Beermann LLP named hereunder as defendants to cause maximum harassment and intimidation to Counterclaim Plaintiff, likely as a means of forcing Kenton Girard to acquiesce to onerous settlement terms. Indeed, Beermann LLP is accused under *Girard v. Village of Glencoe et al.*, 1:24-cv-06882, N. Dist. Illinois of

applying the "Beermann Playbook" to all of its family court cases in which it engages in extrajudicial tactics and extortion against its counter parties.

28.     As a proximate result of this civil conspiracy, Counterclaim Plaintiff has experienced economic and non-economic harms, including the near cancellation of all of her psychotherapy/counseling revenues and significantly increased needs for medical treatment to manage significant worsening of symptoms under her PTSD and interstitial cystitis.


**WHEREFORE**, Counterclaim Plaintiff MARISSA GIRARD respectfully requests that this Court advance this cause on the Court's calendar, and enter judgment in her favor and against Defendants Jane F. Girard, John M. D'Arco, Enrico J. Mirabelli and Matthew D. Elster and award all other relief that it deems appropriate.


**DATED:** October 28 2025                    Respectfully submitted,


                                              MARISSA GIRARD

                                    By:    */s/ Toma Makedonski, Esq.*
                                           1271 Old Mill Ct
                                           Naperville, IL 60564
                                           legaltma@gmail.com
                                           Tel: 773-727-5491
                                           Attorney No. 37672

## CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 28th day of October 2025 by email to the attorneys who have entered their appearances hereunder.

*/s/ Toma Makedonski*

## JURY DEMAND

Crossclaim Defendant/Counterclaim Plaintiff Marissa Girard hereby demands a trial by jury on all issues of fact stated herein.

*/s/ Toma Makedonski*
October 28, 2025

NO. _____

IN THE
SUPREME COURT OF THE UNITED STATES

MARISSA GIRARD,

*Petitioner,*

v.

JANE GIRARD, KENTON GIRARD, VANESSA L.
HAMMER, ESQ., KAREN V. PAIGE, ESQ.,
CANDACE L. MEYERS, ESQ., and
DETECTIVE RYAN MCENERNEY,

*Respondents.*

_____

on for a Writ of Certiorari
ed States Court of Appeals
the Seventh Circuit

_____

R A WRIT OF CERTIORARI

_____

Recipient:
Clerks Office
Sender:
suber, john
Processed:
12/5/2025 7:12:19 PM | 562

00814619073

United States Supreme Court

d
Drive
022
marissadakis@gmail.com
Tel: (773) 425-4393
*Petitioner, In Pro Se*

NO. _____

**IN THE**
**SUPREME COURT OF THE UNITED STATES**

MARISSA GIRARD,

*Petitioner*,

v.

JANE GIRARD, KENTON GIRARD, VANESSA L.
HAMMER, ESQ., KAREN V. PAIGE, ESQ.,
CANDACE L. MEYERS, ESQ., and
DETECTIVE RYAN MCENERNEY,

*Respondents*.

_____

On Petition for a Writ of Certiorari
to the United States Court of Appeals
for the Seventh Circuit

_____

**PETITION FOR A WRIT OF CERTIORARI**

_____

Marissa Girard
965 Forestway Drive
Glencoe, IL 60022
marissadakis@gmail.com
Tel: (773) 425-4393
*Petitioner, In Pro Se*

i

## QUESTION PRESENTED

In the Civil Rights Act of 1964, Congress codified an exception under 28 U.S.C. §1447(d) allowing appellate review for cases "removed pursuant to" 28 U.S.C. §1443, which codification guarantees the availability of a federal forum for certain civil rights claims. See §901, 78 Stat. 266.

Some courts of appeals have interpreted Section 1443(1) to require exercise of the civil right at issue to avail of protection under a federal statute with an anti-prosecution provision; other courts of appeals have required that the federal statute merely proscribe coercion or intimidation of any person in the exercise of the civil right. Others yet have required that the state law at issue be facially unconstitutional. Even this Court has conveyed mixed messages about the sufficiency of the state law violating constitutionality as applied.

The question presented is the following:

**Whether a defendant may remove a state court proceeding to federal court under 28 U.S.C. § 1443(1) when the state action itself violates constitutional rights or federal law.**

ii

## PARTIES TO THE PROCEEDING

The parties to the proceeding in the court of appeals are:

1.      Petitioner (Defendant-Appellant below): Marissa Girard.

2.      Respondents: Jane Girard (Plaintiff-Appellee below), Kenton Girard (Defendant-Appellee below), Vanessa L. Hammer Esq. (TP Defendant-Appellee below), Karen V. Paige Esq. (TP Defendant-Appellee below), Candace L. Meyers Esq (TP Defendant-Appellee below) and Detective Ryan McEnerney (TP Defendant-Appellee below).

iii

## RELATED PROCEEDINGS

This case arises out of the following proceedings:

*IRMO Girard*,
    Case No. 2015-D-009633, Cook County Illinois
*Jane Girard v. Marissa Girard et al.*,
    Civil Action No. 1:25-cv-04586, N. Dist.
    Illinois
*Jane Girard v. Marissa Girard et al.*,
    No. 25-1854, U.S. Court of Appeals for the
    Seventh Circuit
    (judgment entered July 21 2025 and panel
    rehearing denied on August 7 2025)

The related proceedings within the meaning of this Court's Rule 14.1(b)(iii) are listed below:

*IRMO Girard*,
    Case Nos. 1-23-1361, 1-23-1372; 2023 IL App
    (1st)
    (judgment entered December 26, 2023)
*Marissa Girard v. Rossana P. Fernandez et al.*,
    Civil Action No. 1:25-cv-00136, N. Dist.
    Illinois
*Minor Child Gw et al. v. Jane Girard*,
    Case No. 2024-L-012053, Cook County Illinois
*Kenton Girard v. Village of Glencoe et al.*,
    Civil Action No. 1:24-cv-06882, N. Dist.
    Illinois
    (judgment entered August 12 2025)
*Minor Child Gw et al. v. Regina Scannicchio et al.*,
    Civil Action No. 1:25-cv-04551, N. Dist.
    Illinois

iv

# TABLE OF CONTENTS

**Page**

QUESTION PRESENTED.....................................................i

PARTIES TO THE PROCEEDING....................................ii

RELATED PROCEEDINGS............................................iii

TABLE OF APPENDICES.................................................vi

TABLE OF AUTHORITIES.............................................vii

INTRODUCTION..................................................................1

OPINIONS BELOW...............................................................1

JURISDICTION.....................................................................1

STATUTORY PROVISIONS INVOLVED............................1

STATEMENT.........................................................................3

    A. Background................................................................3

    B. Relevant Factual and Procedural
       History.......................................................................5

REASONS FOR GRANTING THE PETITION...................6

I.  *Rachel* and *Peacock* are in direct conflict
    regarding §1443(1).........................................................6

    A. The unconstitutionality standard is
       disparately applied....................................................6

    B. The Court's balancing assessment of federally
       protected civil right versus state action is
       inconsistent................................................................7

II.  The courts of appeals are divided...............................9

III. Adherence to stare decisis is not
     appropriate here...........................................................10

    A. A constitutional blunder demands corrective

v

    action..........................................................................10

    B. A robust avenue to appealability
      was intended............................................. 13

IV. The question is important and this case is
    amenable to review by the Court.............................. 15

    A. Under the status quo, federal civil rights laws
      have no teeth............................................. 15

    B. Whether the state action itself violates
      constitutional rights or federal law is the
      correct hurdle.......................................... 16

    C. The machinery of the federal removal statute
      affects many............................................. 16

    D. Petitioner faces irreparable harm if the Court
      does not take action................................. 17

    E. The domestic relations exception is not at
      play here................................................. 18

    F. This case presents an ideal vehicle...................... 19

CONCLUSION................................................................. 20

vi

## TABLE OF APPENDICES

Page

Appendix A - Denial of Request for Panel Rehearing by
U.S. Court of Appeals for the 7th Circuit,
August 7 2025............................................................1a

Appendix B - Opinion of the U.S. Court of Appeals for
the 7th Circuit,
July 21 2025.............................................................2a

Appendix C - Denial of Reconsider as to Remand Order
by U.S. District Court for the Northern District of
Illinois,
May 15 2025.............................................................4a

Appendix D - Remand Order of U.S. District Court for
the Northern District of Illinois,
May 6 2025..............................................................5a

Appendix E - Award of Sanctions Under Rule 38 by U.S.
Court of Appeals for the 7th Circuit,
November 25 2025.....................................................7a

vii

# TABLE OF AUTHORITIES

**Case Law**                                    **Page**

*Agostini v. Felton,*
    521 U.S. 203 (1997)..........................................12

*Austin v. Michigan Chamber of Commerce,*
    494 U.S. 652 (1990)..........................................12

*Beck v. United States,*
    607 U.S. ____ (2025)........................................10

*Brown v. Board of Education of Topeka,*
    347 U.S. 483 (1954)..........................................10

*Citizens United v. FEC,*
    558 U.S. 310 (2010)..........................................12

*City of Greenwood v. Peacock,*
    384 U.S. 808 (1966)................6, 7, 8, 11, 13, 15

*Dobbs v. Jackson,*
    597 U.S. ____ (2022)........................................12

*Fenton v. Dudley,*
    761 F.3d 770 (7th Cir.2014).........................9, 15

*Gamble v. United States,*
    587 U.S. 678 (2019)..........................................11

*Georgia v. Rachel,*
    384 U.S. 780 (1965)................6, 7, 8, 11, 13, 15

*Hamm v. City of Rock Hill,*
    379 U.S. 306 (1964)..........................................14

*Home Depot USA Inc. v. Jackson,*
    587 U.S. 435 (2019)..........................................17

*Kesler v. Department of Safety,*
    369 U.S. 153 (1962)..........................................14

*McConnell v. Federal Election Commission,*
    540 U.S. 93 (2003)............................................12

*Montejo v. Louisiana,*
    556 U.S. 778 (2009)..........................................13

viii

**Case Law – continued:**                **Page**

*Payne v. Tennessee,*
    501 U.S. 808 (1991)...........................................12

*Plessy v. Ferguson,*
    163 U.S. 537 (1896)...........................................10

*Strauder v. West Virginia,*
    100 U.S. 303 (1880).............................................6

*Vega v. Hempstead Union Free School District,*
    801 F.3d 72 (2d Cir. 2015)................................16


**Statutes**

Americans with Disabilities Act.................................3
Civil Rights Act of 1866............................................7
Civil Rights Act of 1957............................................8
Civil Rights Act of 1964......................................i, 13
Fed. Courts Jurisdiction and Venue
Clarification Act of 2011.........................................17
Illinois Judicial Canon 2.11......................................18
Illinois Supreme Court Rule 137.............................18
Illinois Supreme Court Rule 922...............................4
28 U.S.C. §1443..........................i, 2, 5, 6, 7, 9, 14, 19
28 U.S.C. §1446(b)....................................................17
28 U.S.C. §1447........................................................i, 1
42 U.S.C. §1983...............................................3, 15, 16
735 ILCS 5/2-1001(a)(3)...........................................18


**Other Authorities**

Commentaries on the Laws of England,
    Blackstone (1765)............................................11
*Enbridge Energy LP et al. v. Attorney General of*
    *Michigan,* Case No. 24-783,
    petition for certiorari.......................................17

ix

**Other Authorities – continued:** **Page**

Speech given by J. Thomas on September 25 2025,
    Catholic University of America
    Columbus School of Law
    Washington, D.C..............................................10
Supremacy Clause (Article VI, Paragraph 2
    of United States Constitution)...................9, 14

1

## INTRODUCTION

Marissa Girard, in pro se, respectfully petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Seventh Circuit in this case.

## OPINIONS BELOW

The opinion of the court of appeals (App., *infra*, 1a-2a, 5a) is not yet reported. The opinion of the district court (App., *infra*, 3a-4a) is not yet reported.

Incidentally, the court of appeals barely a week ago issued a Rule 38 sanction (App., *infra*, 7a-12a) against Petitioner wherein Petitioner's appeal of the district court remand decision was deemed frivolous.

## JURISDICTION

The judgment of the court of appeals was entered on July 21 2025, wherein panel rehearing was denied on August 7 2025. On August 28 2025, J. Barrett approved Petitioner's application for an extension of time within which to file her petition for certiorari to December 5 2025. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATUTORY PROVISIONS INVOLVED

Section 1447(d) of Title 28 of the United States Code provides:

2

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

Section 1443 of Title 28 of the United States Code sets forth circumstances under which removal to federal court is permitted:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

3

## STATEMENT

### A.  Background

The history under this matter devolves from violations of federal laws and civil rights by state officials in Cook County, Illinois, against the Petitioner (who is Hispanic/Latinx and suffers from two qualifying disabilities recognized under the Americans with Disabilities Act[1]) via the medium of her forced participation under custody proceedings under *IRMO Girard*, Cook County Case No. 2015-D-009633. The violations were so severe that Petitioner filed a 42 U.S.C. §1983 civil rights lawsuit (*Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, N. Dist. Illinois) against various Cook County judges, Cook County personnel and private attorneys for the abuses[2] perpetrated against her.

---

[1] The Americans with Disabilities Act (ADA) is codified under 42 U.S.C. §12101 *et seq.* Petitioner suffers from PTSD and interstitial cystitis, both of which articulate incapacitating symptoms including without limitation aphasia, decreased locomotive capabilities and acute short-term memory loss.

[2] To provide some perspective about the incorrigible nature of the abuses, after Petitioner filed her Section 1983 lawsuit the defending state actors ramped up their attacks on Petitioner. For example, disability coordinators conducted multiple purported reviews of her needs for accommodation, and multiple times would conclude telling Petitioner – who is physically disabled – that she had to physically appear in court dates because of the "importance" of the proceedings. As another example, Cook County Judge Robert W. Johnson disqualified her legal counsel and gave her only three (3) days to secure new representation. In a final illustrative example, Cook County Judge William Yu struck her third party claims against Respondents, relating to violations of electronic tracking and eavesdropping laws by Jane Girard, even though those claims were timely filed.

4

Petitioner's suit seeks redress from *inter alia* violations of her civil rights wherein she has suffered discrimination on the basis of her race and her disabilities, corrupt state actors have serially caused numerous violations of her First Amendment and Sixth Amendment rights, she has been forced to participate in the custody proceedings under *IRMO Girard* wherein the latest trial order posits she will be criminally tried on January 6-8 2026 – in a family court no less – for charges which have not yet been reduced to writing, and those same state actors have sustained her involvement in a seemingly never-ending, ADA offending, Equal Protection disregarding and statute-violating[3] custody proceeding incepted by Petitioner's husband's ex-wife Jane F. Girard and puppeteered by Jane's attorneys at Beermann LLP.

In particular, Petitioner's allegations of judicial corruption are not speculative. In related federal litigation District Judge Pallmeyer found that the plaintiffs "have raised a credible concern

---

[3] Under Illinois Supreme Court Rule 922, custody proceedings are limited to 18 months in duration, unless there is a finding of good cause for an extension – which has been neither requested nor implemented. The custody proceedings in question are now entering month 45 and the children attain majority age in February 2026. Multiple motions filed by Petitioner under *IRMO Girard* (a) to terminate the proceedings under Rule 922, and (b) to stay the proceedings to locate missing judicial transfer orders from January 2025 – without which the judicial authority of Judge William Yu is uncertain – have been flatly ignored by Judge William Yu, whose refusal to disqualify himself borders on the absurd: he is the starring defendant in Petitioner's civil rights lawsuit and also defending a separate federal lawsuit filed by the minor children at issue under *IRMO Girard*.

5

that the state court proceedings [under *IRMO Girard*] have been corrupted by bribery." *Kenton Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882 (N.D. Illinois; judgment entered August 12, 2025). Despite this finding by a federal court, the state court defendants - including judges accused of accepting bribes - continue to preside over proceedings against Petitioner. The Seventh Circuit's decision effectively forecloses any meaningful federal review of these proceedings, leaving Petitioner trapped in a system that a federal judge has already found credibly corrupt.

Under the present proceedings under *IRMO Girard*, notably, Petitioner's joinder has been implemented solely for the purposes of harassment: Petitioner possesses neither a biological connection to nor parental relationship with the minor children at issue under that matter.

### B.    Relevant Factual and Procedural History

Against this backdrop, Petitioner was served with a pleading under *IRMO Girard* in April 2025 which raised federal questions, and she removed the case to the Northern District of Illinois. Among the bases for removal was 28 USC §1443(1).

Respondent Jane Girard filed a motion for remand instanter in the district court, raising the domestic relations exception to federal jurisdiction. Petitioner opposed that motion stating that federal civil rights questions had been raised which trumped the domestic relations exception. The district judge remanded on May 6 2025 opining there were "no

6

federal questions" even though federal questions facially appeared in the pleading. On parallel requests to vacate the remand order and to impose sanctions against Petitioner, the district judge declined both requests on May 15 2025.

On appeal of the remand order, finding that Petitioner did not raise a state law prohibiting her from enforcing her civil rights, the Seventh Circuit declined to undertake a review of the remand order (denial ruling on remand on July 21 2025 and denial ruling on request for panel rehearing on August 7 2025) and sanctioned her under Rule 38 to boot (sanction ruling on November 25 2025; see App., *infra*, 7a-12a).

## REASONS FOR GRANTING THE PETITION

### I.   *Rachel* and *Peacock* are in direct conflict regarding §1443(1).

#### A.   The unconstitutionality standard is disparately applied.

This case presents the need to revisit the contours of this Court's reasoning under *Georgia v. Rachel*, 384 U.S. 780 (1966) and *City of Greenwood v. Peacock*, 384 U.S. 808 (1966), for which both opinions were authored in the same term by J. Stewart. Specifically, the guidance memorialized on how to satisfy the civil rights removal statute codified under 28 USC §1443(1) is directly conflicting between the two decisions.

Prior to *Rachel* and *Peacock*, a line of cases starting with *Strauder v. West Virginia*, 100 U.S. 303

7

(1880) adduced the so-called *Rives-Powers* doctrine
(as it is labelled in *Peacock*) which interpreted
removability of a civil rights case under the Civil
Rights Act of 1866 – the progenitor of 28 USC
§1443(1) – as requiring a facially unconstitutional
statute. The *Rives-Powers* doctrine duly informed J.
Stewart's reasoning in *Rachel*, wherein he
determined that the facial unconstitutionality
requirement was too restrictive: instead,
unconstitutionality of a statute as applied to the
party seeking relief was more appropriate.

Paradoxically, however, when J. Stewart
turned to *Peacock*, the absence of a facially
unconstitutional statute militated against removal.
Further perplexing, J. Stewart ruled under *Rachel*
that the defendant is entitled to an evidentiary
hearing to be held as to whether there has been a
denial of his equal civil rights. By contrast, J.
Stewart does not speak to such an entitlement under
*Peacock*.

**B.    The Court's balancing assessment
of federally protected civil right
versus state action is inconsistent.**

The difference of approach is confounding
wherein the global fact patterns of *Rachel* and
*Peacock* are congruent. To wit, *Rachel* addresses
defendants remaining in a public place of business
after management told them to leave, which conveys
two concurrent plot lines: (a) the action is a
demonstration of a civil right, (b) the action
constitutes one or more petty criminal offenses e.g.
trespass. Similarly, *Peacock* addresses defendants

8

openly assisting others to register to vote, which also conveys two parallel plot lines: (i) the action is a demonstration of a civil right, (ii) the action constitutes one or more petty criminal offenses e.g. disorderly conduct.

The gravamen of both cases is enforcement of a state law, which is deemed unconstitutional *as applied* to the concerned defendant(s). Strangely, J. Stewart identifies and extols the federal statute protecting the civil right under *Rachel*, but conveys a pretense that he is unaware of any authority protecting voting under *Peacock*. At a minimum the Equal Protection Clause does not permit targeting persons assisting voter registrations for prosecution because of the color of their skin. Additionally, the Civil Rights Act of 1957 at §1971(b), makes it unlawful to "intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote." Certainly interfering with the voter registration process constitutes interference with the right to vote. Such a treatment is not only unreasonable but dangerous, as here, wherein a grand conflict for the ages results from his inconsistent analysis under the two cases. The existence of a constitutional or federal authority to protect the activity which gave rise to the state action – whether or not it includes an immunity clause – should be enough to infer that a trial, put on by the same state which has already been demonstrated to abrogate federal law, is likely to be unfair.

9

## II.    The courts of appeals are divided.

The second, fifth and seventh circuits have different worldviews about the scope of removability governed by §1443(1). To wit, the Second Circuit under *Emigrant Savings Bank v. Elan Management Corp.*, 668 F.2d 671 (1982) requires a federal statute with explicit anti-prosecution language to pass muster. On the other hand, the Fifth Circuit only requires "intimidate, threaten, or coerce" type of language in the federal statute at issue. *Whatley v. City of Vidalia*, 399 F.2d 521 (1968).

The Seventh Circuit – which sanctioned Petitioner for seeking review of remand, citing to *Fenton v. Dudley*, 761 F.3d 770 (7th Cir. 2014) – seems to require a facially unconstitutional state law harkening back to the now repudiated and Supremacy Clause offending *Rives-Powers* doctrine.

The present case falls into this split - Petitioner is pursuing claims under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00139, N. Dist. Illinois for disregarding ADA accommodations, for violating her First Amendment Rights, for violating her Sixth Amendment rights, for violating her right to an impartial judge, and the list goes on, but the Seventh Circuit says that's not enough.

10

## III. Adherence to *stare decisis* is not appropriate here.

### A. A constitutional blunder demands corrective action.

Given the aforedescribed material inconsistencies, it remains to evaluate whether adherence to *stare decisis* is appropriate here. As J. Thomas recently opined at an event at the Catholic University of America Columbus School of Law in Washington, D.C., on September 25 2025, "Precedent should be respectful of our legal tradition and our country and our laws, and be based on something, not just something somebody wrapped up and others went along with." J. Thomas further explained that blind adherence to *stare decisis* carries significant risks of ossifying bad law: e.g. *Plessy v. Ferguson* upheld segregation laws until it was properly overturned by *Brown v. Board of Education of Topeka.*

Indeed, these sentiments have been enshrined in a number of this Court's recent opinions. For example, under *Beck v. United States*, 607 U.S. ____ (2025), J. Thomas wrote in his dissent at p.5, n.1:

> Therefore, although I agree with JUSTICE SOTOMAYOR that *Feres* "is a difficult decision to justify," I respectfully disagree that "respect for the Court's rules of stare decisis" is a reason to deny the petition.

11

As another example, J. Thomas's concurrence under *Gamble v. United States*, 587 U.S. 678 (2019) at p. 2 further outlined the proper contours of application of *stare decisis*:

> In my view, the Court's typical formulation of the stare decisis standard does not comport with our judicial duty under Article III because it elevates demonstrably erroneous decisions—meaning decisions outside the realm of permissible interpretation—over the text of the Constitution.

Indeed, as this Court recognized in *Gamble*, '[w]hen a precedent's reasoning has been discredited, the Court has not hesitated to overrule it.' 587 U.S. at 689. *Peacock*'s reasoning contradicts *Rachel* on the same statutory provision, and it was decided in the same term by the same judge, creating an unworkable framework that the lower courts have struggled to apply for nearly 60 years.

Continuing, J. Thomas explores the roots of *stare decisis* in common law England, noting that pursuant to Commentaries on the Laws of England, Blackstone (1765) at p. 70:

> [J]udges should disregard precedent that articulates a rule incorrectly when necessary "to vindicate the old [rule] from misrepresentation" … This view – that demonstrably erroneous "blunders" of prior courts should be corrected – was accepted by state courts throughout the

12

19th century.

Additional recent guidance can be found wherein J. Alito describes the contours of *stare decisis* jurisprudence, stating under the opinion of the court at p. 39 under *Dobbs v. Jackson*, 597 U.S. ____ (2022):

> We have long recognized, however, that stare decisis ... "is at its weakest when we interpret the Constitution," *Agostini v. Felton*, 521 U.S. 203, 235 (1997) ... But when it comes to the interpretation of the Constitution ... we place a high value on having the matter "settled right."

Under *Citizens United v. FEC*, 558 U.S. 310 (2010) the Court overruled the holdings relating to regulation of political speech enshrined under *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990) *McConnell v. Federal Election Comm'n*, 540 U.S. 93 (2003). Delivering the Court's opinion, J. Kennedy reminds us of the traditional guideposts for *stare decisis*:

> "Beyond workability, the relevant factors in deciding whether to adhere to the principle of stare decisis include the antiquity of the precedent, the reliance interests[4] at stake, and of course whether

---

[4] Under the Court's ruling under *Payne v. Tennessee*, 501 U.S. 808, 828 (1991), reliance interests are important considerations in property and contract cases, where parties may have acted

the decision was well reasoned." *Montejo v. Louisiana*, 556 U.S. 778, 792– 793 (2009) (overruling *Michigan v. Jackson*, 475 U.S. 625 (1986)).

Pursuant to analysis of the traditional guideposts of *stare decisis*, the antiquity factor is muted with both decisions being released in 1966. The reliance interests are non-existent because the underlying litigation here concerns custody – devolving from *IRMO Girard*, Case No. 2015-D-09633, Cook County, Illinois – not property or contract. Most saliently, the *Rachel-Peacock* framework for delimiting the scope of removal under civil rights matters is incoherent and unworkable.

This case provides an opportunity to correct the blunder under *Rachel* and *Peacock* which has wrongfully constrained the scope of removable civil rights matters from before the ink was dry on the Civil Rights Act of 1964.

### B. A robust avenue to appealability was intended.

The dissent by J. Douglas under *Peacock* at 849, n. 13 offers evidence of legislative intent wherein the Civil Rights Act of 1964 was amended to allow appealability of a remand order:

> As then-Senator Humphrey, floor manager of the Civil Rights Act of 1964,

---

in conformance with existing legal rules in order to conduct transactions.

14

put it: "[T]he real problem at present is not a statute which is on its face unconstitutional; it is the unconstitutional application of a statute." 110 Cong. Rec. 6551 (1964).

Similarly, J. Douglas at 850 references Cong. Globe 39th Cong., 1st Sess., 1759 to highlight that Senator Trumbull – who managed the bill on the floor – stated that the person experiencing discrimination "should have authority to go into the Federal courts in all cases where a custom prevails in a State, or where there is a state-law of the State discriminating against him."

Beyond legislative intent, the Supremacy Clause[6] invalidates the requirement of a facially unconstitutional state legislative enactment in order to predict an unfair outcome in the state court to activate the operation of 1443(1). To wit, there are many instances wherein a legal proceeding is brought (criminal or civil) wherein the articulated counts are not Constitution-offending on their face, but are indeed Constitution-offending as applied.

In such instances, the mere inception of such a legal proceeding portends a violation of the Supremacy Clause. Wherein the state has willingly defied the law of the United States by kicking off such a legal proceeding, it follows that an unfair outcome in state court is likely to follow.

---

[6] See *Hamm v. City of Rock Hill* for a version of this argument articulated in 1964, and which cites *Kesler v. Department of Safety*, 369 U.S. 153, 172 (1962) in support of the invocation of the Supremacy Clause.

15

### IV. The question is important and this case is amenable to review by the Court.

#### A. Under the status quo, federal civil rights laws have no teeth.

One need not look further than the sanction imposed by the court of appeals hereunder, which cited to *Fenton v. Dudley*, 761 F.3d 770 (7th Cir. 2014) for the proposition that a state law must facially prevent enforcement of a civil right in order to pass muster. Immediately before the conclusion of the Court's opinion under *Fenton*, J. Flaum specifically laments "Absent clarification from the Supreme Court, we will need to do our best to read between the lines in *Rachel* and *Peacock* if the anti-retaliation/anti-prosecution issue is squarely presented in a future appeal."

The practical effect of the Seventh Circuit's interpretation is to immunize state retaliation against federal civil rights plaintiffs. Petitioner filed a federal civil rights lawsuit under 42 U.S.C. §1983 against state judges and judicial personnel. In response, those same judges and personnel escalated deprivations of her right in the state proceeding against her, denied her disability accommodations, scheduled a trial while she was medically incapacitated, and struck her timely third party claims. The Seventh Circuit sanction effectively punishes Petitioner for seeking redress in the federal courts. This creates a Catch-22: Petitioner cannot vindicate her federal rights in state court (because the state actors are retaliating), and she cannot remove to federal court (because the Seventh Circuit

16

requires a facially unconstitutional statute).

The question presented goes to the heart of whether federal civil rights laws provide a meaningful remedy or merely an illusory one. If state actors can retaliate against federal civil rights plaintiffs with impunity by manipulating state court proceedings, and if those plaintiffs have no avenue to federal court because their state lacks a facially unconstitutional statute, then the federal civil rights laws Congress enacted are effectively nullified.

**B.    Whether the state action itself violates constitutional rights or federal law is the correct hurdle.**

The retaliatory state action against Petitioner in Cook County for filing her Section 1983 lawsuit is itself actionable under Section 1983 according to the Second Circuit. *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2nd Cir. 2015) From Petitioner's perspective, the standard should simply be wherein the state action itself violates constitutional rights or federal law. Whether that is expressed by an immunity clause, an anti-prosecution clause or actionability is missing the forest for the trees and inconsistent with legislative intent.

**C.    The machinery of the federal removal statute affects many.**

From a more global perspective, this question is important as the federal removal statute is invoked in a large number of cases litigated in the

17

federal court system. In recent years, more than 30,000 civil cases are removed from state to federal court per year, and many of those cases involve more than one defendant. Comparing such a figure with the aggregate number of filings in the federal courts as published under the published findings under the Federal Judicial Caseload Statistics for 2024 reveals the number of cases affected by removal constitutes a significant percentage of filings.

The fact that the Federal Courts Jurisdiction and Venue Clarification Act of 2011 amended 28 U.S.C. § 1446(b) and codified the "last served defendant rule" is indicative of the heavy load of cases which are affected under the removal statute. Furthermore, the Court has granted review to other matters directed at the mechanics of the federal removal statute. See for example *Enbridge Energy LP et al. v. Attorney General of Michigan*, No. 24-783 which has been docketed for review here. Similarly, (a) the opinion by J. Thomas under *Home Depot USA Inc. v. Jackson*, 587 U.S. 435 (2019), and (b) the opinion by J. Gorsuch under *BP P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. ___ (2021) reveal that the contours of federal removal jurisprudence are still being shaped.

### D. Petitioner faces irreparable harm if the Court does not take action.

Petitioner faces trial on January 6-8 2026 -- scheduled weeks before the minor children attain majority age and custody becomes moot — without a charging instrument, without Sixth Amendment protections, and while Petitioner is medically unable to participate due to ADA-qualifying disabilities.

18

The trial is to be presided over by Cook County Judge William Yu who is a defendant[6] (in his individual capacity) in Petitioner's federal civil rights lawsuit and a related lawsuit *Minor Child Gw et al. v. Scannicchio et al.*, Civil Action No. 1:25-cv-04551, N. Dist. Illinois, challenging these very proceedings. Absent this Court's intervention, Petitioner will be subjected to a constitutionally deficient criminal proceeding while the legal question of whether she could properly remove such proceedings to federal court remains unresolved.

### E. The domestic relations exception is not at play here.

The domestic relations exception does not bar review here. Petitioner does not seek custody determinations or domestic relations style relief, nor is her participation in *IRMO Girard* related to any such determinations. Instead, Petitioner challenges retaliation for filing a federal civil rights lawsuit, denial of ADA accommodations, and violation of her

---

[6] Multiple previous attempts to remove Cook County Judge William Yu for cause have failed, although the judicial officer who cleared him of wrongdoing on September 18 2025 – Judge Robert W. Johnson – was at the time judicially sidelined under 735 ILCS 5/2-1001(a)(3). As a result, Judge Yu has improperly returned to the bench and every action he now takes is wholly without jurisdiction. A more recent attempt to disqualify Judge Yu for violation of Illinois Judicial Canon 2.11, wherein he has an impermissible personal interest in the outcome of the state case against Petitioner, also failed wherein Judge Yu – newly returned to the bench – cynically pronounced in open court that he can be fair and impartial, announcing a sanction under Illinois Supreme Court Rule 137 against Petitioner for filing a paper attempting to remove him.

19

constitutional rights. These are quintessentially federal questions. Moreover, Petitioner is not a parent and has no custody rights at issue - she was improperly joined to the custody proceeding solely to harass her for marrying the father. The underlying federal questions of civil rights violations and ADA violations are separate from any custody dispute.

## F.    This case presents an ideal vehicle.

This case presents an ideal vehicle to resolve the question presented. The issue is cleanly presented, fully briefed, and dispositive. The factual record is complete. Unlike many §1443 cases, this case involves documented federal court findings of corruption, clear evidence of retaliation for federal civil rights litigation, and a defendant judge presiding over proceedings that form the basis of federal claims against him - presenting the Court with a stark example of why the current framework fails to protect federal civil rights.

Notably, the question recurs frequently - affecting tens of thousands of removal cases annually - making resolution important to the proper functioning of the federal courts.

20

## CONCLUSION

The Court should grant the petition.

**Dated: December 3, 2025**

Respectfully submitted,

_/s/ Marissa Girard_, in pro se
965 Forestway Drive
Glencoe, IL 60022
marissadakis@gmail.com
(773) 425-4393

## TABLE OF CONTENTS

Page

Appendix A:
Denial of Request for Panel Rehearing by U.S.
    Court of Appeals for the 7th Circuit
    (August 7, 2025).......................................................1a

Appendix B:
Opinion of the U.S. Court of Appeals for the
    7th Circuit (July 21, 2025).....................................2a

Appendix C:
Denial of Reconsider as to Remand Order by
    U.S. District Court for the Northern District
    of Illinois (May 15, 2025).......................................4a

Appendix D:
Remand Order of U.S. District Court for the
    Northern District of Illinois (May 6, 2025)..........5a

Appendix E:
Award of Sanctions Under Rule 38 by U.S.
    Court of Appeals for the 7th Circuit
    (November 25, 2025).............................................7a

Appendix A

United States Court of Appeals
For the Seventh Circuit
Chicago, Illinois 60604
August 7, 2025
Before
DIANE S. SYKES, Chief Judge
DAVID F. HAMILTON, Circuit Judge
CANDACE JACKSON-AKIWUMI, Circuit Judge

No. 25-1854

| | |
|---|---|
| JANE F. GIRARD, Plaintiff-Appellee, | Appeal from the United States District Court for the Northern District of Illinois,Eastern Division. |
| and KENTON GIRARD, Defendant-Appellee, | No. 25-cv-04586 |
| v. | Jeremy C. Daniel, Judge. |
| MARISSA GIRARD, Defendant-Appellant. | |

O R D E R

On consideration of the petition for rehearing, all members of the original panel voted to deny rehearing. It is therefore ordered that the petition for panel rehearing is DENIED.

1a

Appendix B

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722-219 S. Dearborn
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

### ORDER

July 21, 2025

Before
DIANE S. SYKES, Chief Judge
DAVID F. HAMILTON, Circuit Judge
CANDACE JACKSON-AKIWUMI, Circuit Judge

No. 25-1854   JANE F. GIRARD,
Plaintiff - Appellee
And

KENTON GIRARD,
Defendant - Appellee
v.
MARISSA GIRARD,
Defendant - Appellant

Originating Case Information:
District Court No: 1:25-cv-04586
Northern District of Illinois, Eastern Division
District Judge Jeremy C. Daniel

2a

On consideration of the papers filed in this appeal and review of the short record,

IT IS ORDERED that this appeal is DISMISSED for lack of jurisdiction.

This court has consistently reminded litigants that an order remanding a case to state court based on a lack of subject matter jurisdiction or a defect in the removal procedure is not reviewable on appeal, regardless of whether the decision is correct, except when the case was removed under 28 U.S.C. §§ 1442 or 1443. See 28 U.S.C. § 1447(d); e.g., The Northern League, Inc. v. Gidney, 558 F.3d 614, 614 (7th Cir. 2009); Phoenix Container, L.P. v. Sokoloff, 235 F.3d 352, 354–55 (7th Cir. 2000).

In the present case, appellant seeks to appeal the district court's order remanding this case to state court for lack of federal jurisdiction. 28 U.S.C. § 1447(c). Although appellant disputes this determination, this case was not removed under § 1442 or § 1443, so there is no basis to seek appellate review. Appellant's belated attempts to argue for removal under § 1443 are frivolous. Although appellant suggests the litigation against her implicates rights of racial equality, this theory cannot satisfy the second part of § 1443, which requires that she has been "denied or cannot enforce" that racial-equality right in state court because of a barrier imposed by some formal expression of state law, such as a statute. Fenton v. Dudley, 761 F.3d 770, 774–75 (7th Cir. 2014). Appellant has identified no such law; the mere assertion that general principles have been applied in a discriminatory manner does not satisfy § 1443. See City of Greenwood v. Peacock, 384 U.S. 808, 828 (1966).

3a

Appendix C

UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois –
Eastern Division

Jane F. Girard
     Plaintiff,

v.                    Case No.: 1:25–cv–04586
                            Honorable Jeremy C. Daniel

Marissa Girard, et al.
     Defendant.

NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, May 15, 2025:

     MINUTE entry before the Honorable Jeremy C. Daniel: Telephone motion hearing. For the reasons stated on the record, motions for attorneys fees [17] and to vacate remand order [20] are denied. Motion for immediate transmission of certified copy of remand order [18] is granted. The Clerk is directed to remand this case forthwith. This case remains closed. Mailed notice. (vcf, )

4a

Appendix D

UNITED STATES DISTRICT COURT FOR THE
Northern District of Illinois –
Eastern Division

Jane F. Girard
      Plaintiff,

V.                       Case No.: 1:25–cv–04586
                       Honorable Jeremy C. Daniel

Marissa Girard, et al.
      Defendant.

NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday,
May 6, 2025:

MINUTE entry before the Honorable Jeremy C. Daniel:
Motion hearing held. Marissa Girard failed to appear.
Marissa Girard removed this case to federal court on
April 28, 2025. (R. 1.) In her notice of removal, she
claims that an April 28, 2025, declaratory judgment
pleading served on her by Kenton Girard raised a
federal question. (R. 1 at 2.) She claims that a
postnuptial indemnification agreement that grants her
reasonable and necessary legal fees from Kenton Girard
if Jane Girard violates Marissa Girard's rights under
federal law. (Id.) She further claims that Kenton Girard
has brought claims that raise federal questions. (R. 1 at
3.) At no point does she explain which rights have been
violated under federal law or what federal questions
Kenton Girard's claims implicate. Exhibit A to her
notice of removal is a motion to join her as a third party
in a custody dispute between Jane and Kenton Girard.

5a

According to Exhibit A, Jane and Kenton have divorced
and Kenton and Marissa married. According to Kenton
Girard's crossclaims, which she also attached to her
notice of removal, Kenton and Marissa are no longer
married. Kenton Girard's crossclaims address the
postnuptial indemnification agreement, which Marissa
seeks to enforce in connection with a pending federal
lawsuit. Nothing about those claims introduce a federal
question into this case, which centers on domestic
disputes related to custody and divorce agreements.
Therefore, this Court lacks subject matter jurisdiction.
Accordingly, this case is remanded to state court. Civil
case terminated. Mailed notice. (vcf, )

Appendix E

In the United States Court of Appeals for the Seventh Circuit

No. 25-1854

JANE F. GIRARD,

Plaintiff-Appellee,

and

KENTON GIRARD,

Defendant-Appellee,

v.

MARISSA GIRARD,

Defendant-Appellant.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 1:25-cv-04586 — Jeremy C. Daniel, Judge.

DECIDED NOVEMBER 25, 2025

Before SYKES, HAMILTON, and JACKSON-AKIWUMI, Circuit Judges.

SYKES, Circuit Judge. A few years after their divorce, Jane and Kenton Girard became ensnared in acrimonious post-judgment proceedings concerning the custody of their two minor children. Kenton had remarried shortly after the divorce, and in 2023 the Illinois state court added his wife Marissa Girard as a party to the postjudgment litigation. Her joinder complicated the already protracted proceedings:

Kenton later cross-claimed against Marissa when they disagreed about his obligations under a "postnuptial agreement" that purported to require him

7a

to indemnify her for legal expenses and any reduction in her earnings incurred in connection with the custody dispute. Marissa responded by removing the entire case to federal court in the Northern District of Illinois. It had a short shelf life there: the district judge concluded that the case did not present a federal question, so he remanded it to state court for lack of jurisdiction. Marissa appealed, and we dismissed the case for lack of appellate jurisdiction.

Jane Girard now moves for sanctions under Rule 38 of the Federal Rules of Appellate Procedure, arguing that Marissa's appeal was frivolous. Indeed it was (in more ways than one), so we grant the motion for sanctions.

According to the state-court records attached to the removal notice, Jane and Kenton Girard were divorced in November 2015 in an order issued by the Cook County Circuit Court. The divorce judgment resolved custody issues regarding their two minor daughters—at least initially.

Not long after the divorce, Kenton married Marissa Girard, and within a few years, he and Jane were back in court in a contentious custody dispute. Protracted postjudgment proceedings ensued. In 2023 Jane moved to add Marissa to the postjudgment proceedings as a third-party respondent, accusing her of attempting to poison the mother–daughter relationship. The judge granted the joinder motion.

In February 2025 the court set a trial date to resolve the ongoing custody issues. A few days before trial, Kenton cross-claimed against Marissa seeking a declaration that he had no obligations under a supposed "postnuptial indemnification agreement" that ostensibly required him to reimburse her for legal expenses and any reduction in her earnings if Jane's actions in the

8a

custody dispute "proximately cause[d]" a violation of her rights under the Constitution or federal law.

That same day Marissa removed the entire case to federal court. Jane promptly moved to remand it to state court, asserting that the case did not present a substantial federal question. She noted that the case was a state-law domestic-relations dispute and that Kenton's cross-claim concerned only the interpretation of the postnuptial agreement, an issue governed exclusively by state contract law. The district judge agreed and remanded the case to state court, explaining that Kenton's cross-claim "center[ed] on domestic disputes" related to the postnuptial agreement, so it did not confer federal-question jurisdiction.

Marissa appealed. Before briefing commenced, we issued an order requiring her to explain why her appeal should not be dismissed for lack of jurisdiction. We noted that remand orders are not appealable unless the case is removed under 28 U.S.C. § 1442, the federal-officer removal provision, or § 1443, the civil-rights removal provision. See 28 U.S.C. § 1447(d). In response Marissa argued—for the first time —that she had removed the case pursuant to § 1443 because she faced a "barrage" of motions against her in the state-court proceedings, which she claimed amounted to discrimination based on her race and disability.

We dismissed Marissa's appeal for lack of jurisdiction, explaining that her belated invocation of § 1443 was frivolous. She had not removed the case under § 1443, nor had she established—as the statute requires—that she had been denied or could not enforce a racial-equality right in state court because of a barrier imposed by some formal expression of state law, like a statute. See Fenton v. Dudley, 761 F.3d 770, 774–75 (7th Cir. 2014). Marissa moved for panel rehearing, and

9a

when that motion was denied, she obtained an extension of time to file a petition for a writ of certiorari in the Supreme Court.

Meanwhile, after we dismissed the appeal for lack of jurisdiction, Jane moved for sanctions against Marissa under Rule 38 of the Federal Rules of Appellate Procedure, which authorizes an award of "just damages and single or double costs" incurred in defending against a frivolous appeal. She seeks an award of $2,808.75 to cover her attorney's fees and costs on appeal. The motion is well justified and we grant it.

"An appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit." Upchurch v. O'Brien, 111 F.4th 805, 813 (7th Cir. 2024) (quotation marks omitted). Jane contends that Marissa's appeal satisfies this demanding standard. We agree. Although a decision to impose sanctions under Rule 38 is not one we make lightly, see Goyal v. Gas Tech. Inst., 732 F.3d 821, 823–24 (7th Cir. 2013), this appeal was doubly frivolous. Marissa's challenge to the judge's removal order was doomed to fail, and we unquestionably lacked appellate jurisdiction to hear it.

Taking those points in order, there was never any basis to remove this case to federal court in the first place. Because the parties—all citizens of Illinois—are not diverse, "the propriety of removal depend[ed] on the existence of a federal question." Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, 707 F.3d 883, 890 (7th Cir. 2013). But Kenton's cross-claim — the proffered basis for removal — is a state-law contract claim. See Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action."). And it is the "rare" state-law claim that gives rise to federal-question jurisdiction. Webb v. Fin. Indus. Regul.

10a

Auth., Inc., 889 F.3d 853, 860 (7th Cir. 2018). To do so, the claim must "necessarily raise[]" a "substantial" and "actually disputed" federal question. Gunn v. Minton, 568 U.S. 251, 258 (2013).

As the district judge correctly concluded, Kenton's cross- claim raises contract and domestic-relations issues — the stuff of which state law is quintessentially concerned. Wis. Cent. Ltd. v. TiEnergy, LLC, 894 F.3d 851, 854 (7th Cir. 2018); Allen v. Allen, 48 F.3d 259, 261 (7th Cir. 1995). Although the postnuptial agreement mentions federal law, the dispute remains one of state contract and domestic-relations law; it does not require the resolution of any federal question—much less a substantial one. See Minor v. Prudential Sec., Inc., 94 F.3d 1103, 1105 (7th Cir. 1996). In short, the judge's decision to remand the case for lack of subject- jurisdiction was unassailable, so Marissa was "guaranteed to lose" on appeal. McCurry v. Kenco Logistics Servs., LLC, 942 F.3d 783, 791 (7th Cir. 2019).

On top of that, the order was not reviewable on appeal. As our dismissal order explained, we have "consistently reminded litigants" that remand orders are ordinarily not appealable. See, e.g., Phoenix Container, L.P. v. Sokolo , 235 F.3d 352, 354–55 (7th Cir. 2000). Section 1447(d) makes this crystal clear: an order remanding a case to state court is not appealable—regardless of whether the decision was correct— unless § 1442 or § 1443 supplied the basis for removal. N. League, Inc. v. Gidney, 558 F.3d 614, 614 (7th Cir. 2009) (per curiam); see Mac Naughton v. Asher Ventures, LLC, 76 F.4th 539, 543 (7th Cir. 2023) ("We have held repeatedly that appellants risk Rule 38 sanctions when they litigate in the face of controlling authority that they pretend does not exist.").

11a

Marissa relied on neither provision when removing the case to federal district court. Although she cited § 1443 in response to our jurisdictional order as part of a last-ditch to justify her appeal, she failed to identify any state law that had denied or inhibited her ability to enforce federal racial-equality rights, as the statute requires. See Fenton, 761 F.3d at 773–74. Instead, she offered vague assertions about the discriminatory application of general principles— assertions do not come close to satisfying § 1443. Marissa's invocation of that provision was not just tardy and contrived; it was frivolous.

None of Marissa's arguments in response dissuades us from imposing sanctions. For starters, she argues that because the district judge declined to impose an award of fees under § 1447(c) for a frivolous removal, Jane's request for sanctions in this court necessitates a cross-appeal. Not so. Although the judge concluded that Marissa's improper removal did not warrant awarding Jane her costs and we retain authority to impose sanctions for Marissa's frivolous appeal. FED. R. APP. P. 38; Mac Naughton, 76 F.4th at 543–44. Further, while Marissa insists that she is proceeding in good faith, the record shows otherwise. After removing a case that clearly belonged in state court, Marissa prolonged the litigation by requiring Jane to defend a frivolous appeal. Upchurch, 111 F.4th at 814. Under these circumstances, Rule 38 sanctions are warranted.

Finally, the modest amount Jane seeks— fees and costs on appeal—is just and reasonable. We award her damages in the amount of $2,808.75.

It is so ORDERED.

12a

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
   to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
12/31/2025 11:38 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 89
35979421

# IN THE IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

|  |  |  |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF | ) | No. 2015 D9633 |
| KENTON GIRARD, | ) | |
|  | ) | Cal. 89 |
| Petitioner, | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| JANE GIRARD, | ) | |
|  | ) | |
| Respondent. | ) | |
|  | ) | |
| MARISSA GIRARD, | ) | |
|  | ) | |
| Third-Party Respondent. | ) | |
|  | ) | |

## MOTION TO VOLUNTARILY NON-SUIT

**NOW COMES** the Respondent, JANE GIRARD ("Jane"), by and through her attorneys, Beermann LLP, and pursuant to Section 2-1009 of the Illinois Code of Civil Procedure and moves this Honorable Court to enter an order dismissing some of her cause of action without prejudice. In support thereof, Jane states as follows:

1. On October 7, 2025, this Court entered an Order setting this matter for trial on seventeen (17) pleadings. Trial dates are currently scheduled for January 6, 7, and 8, 2026 A copy of the Order is attached as **Exhibit A**.

2. The pleadings currently set to be held at trial are listed below:

- Jane's May 27, 2022, Motion to Appoint a Parenting Coordinator and Compel Use of Our Family Wizard ("Pleading 1");

Page 1 of 4

- Jane's August 31, 2022, Motion to Compel Enrollment in Therapy (seeking reunification therapy for the family) ("Pleading 2");

- Kenton's September 7, 2022, Motion to Modify Parenting Time, Decision Making Responsibilities, and for Other Relief ("Pleading 3");

- Jane's September 20, 2022, Petition for Finding of Parenting Time Abuse directed against Kenton and Marissa ("Pleading 4");

- Jane's November 1, 2022, Emergency Verified Petition for Rule to Show Cause for Adjudication of Indirect Civil Contempt and for Other Relief: Failure to Abide by the Terms of the Allocation Judgment ("Pleading 5");

- Jane's May 16, 2023, Petition for Parenting Interference ("Pleading 6");

- Kenton's July 11, 2023, Motion to Modify Joint Parenting Agreement and Custody Judgment ("Pleading 7");

- Jane's July 13, 2023, Motion to Enforce the Joint Parenting Agreement ("Pleading 8");

- Jane's August 1, 2023, Petition for Rule re July 25, 2023 Order ("Pleading 9");

- Jane's March 13, 2024, Motion to Modify the Joint Parenting Agreement and to Implement the 604.10(b) Recommendations ("Pleading 10");

- Jane's July 10, 2025, Motion for Adjudication for Direct Criminal Contempt and to Declare Kenton and Marissa Vexatious Litigants ("Pleading 11")

- Jane's September 25, 2025, Fee Petition ("Pleading 12")

- Jane's forthcoming petition for gees relating to Marissa Girard's Motion for Substitution of Judge Yu and a Matter of Right ("Pleading 13");

- Kenton's April 24, 2025, Motion to Disqualify Phyllis Amabile MD ("Pleading 14");

- Kenton's April 24, 2025, Motion to Disqualify Beermann LLP ("Pleading 15");

- Kenton's April 24, 2025, Motion to Terminate Parental Rights of Jane Girard ("Pleading 16"); and

- Kenton's April 28, 2025, DJ Crossclaim ("Pleading 17").

3.      Unfortunately, Kenton and Marissa's egregious, vexatious behavior—including but not limited to: (1) the filing of at least 15 improper Petitions for Substitution of Judge in the instant matter; (2) the manufacturing of a third party complaint and improper removal of this matter to federal court; and (3) the filing of at least seven (7) frivolous lawsuits against virtually every judge and attorney even tangentially associated with this case in state and federal courts across Chicago.

4.      Kenton and Marissa's strategy to "run out the clock" in this matter appears to have succeeded, at least in part. As trial nears in this matter, Jane questions the efficacy of pursuing all her claims at trial.

5.      Even though she believes she has meritorious claims under all her pleadings, Jane wishes to voluntarily non-suit a number of pleadings in the interest of judicial economy and to ensure that the most important matters in this case are heard and adjudicated.

6.     Section 2-1009 of the Illinois Code of Civil Procedure provides, in pertinent part, as follows:

(a)     The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause.

*735 ILCS 5/2-1009(a).*

7.     Jane requests that Pleading 1, Pleading 2, Pleading 8, Pleading 10, and Pleading 11 be voluntarily non-suited without prejudice.

**WHEREFORE**, the Respondent, JANE GIRARD, by and through her attorneys, BEERMANN LLP, respectfully requests this Honorable Court grant the following relief:

A.     Enter an order dismissing Jane's Pleading 1, Pleading 2, Pleading 8, Pleading 10, and Pleading 11, without prejudice, *instanter*; and

B.     Award Jane such other and further relief as this Honorable Court deems equitable and just.

Respectfully submitted,

By: _Enrico J. Mirabelli_
One of Her Attorneys

Enrico J. Mirabelli
Karen V. Paige
Candace L. Meyers
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark Street - Suite 3000
Chicago, Illinois 60601
Tel: (312) 621-9700
Atty. Code 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Page **4** of **4**

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
12/31/2025 11:38 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 89
35979421

**IN THE IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
)
      Petitioner, )
)
   and )
)
JANE GIRARD, )
)
      Respondent. )
)
MARISSA GIRARD, )
)
      Third-Party Respondent. )
)

No. 2015 D9633

Cal. 89

The Hon. William Yu, Judge
Presiding.

ENTERED
Judge William Yu-2221
OCT 07 2025
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

<u>**ORDER FOLLOWING OCTOBER 3, 2025 COURT APPEARANCE**</u>

This cause coming before the Hon. William Yu on Respondent, Jane Girard's Petition for Fees, for Marissa Girard's Motion for Substitution of Judge Yu as a Matter of Right, on Petitioner, Kenton Girard's Motion to Terminate Proceedings, and for case management, all parties appearing individually and/or through counsel, the Court having jurisdiction over the parties and the subject matter and being fully advised in the premises, IT IS HEREBY ORDERED THAT:

1. For the reasons stated on the record, the Court's February 7, 2025 order constituted a substantial ruling for purposes of 735 ILCS 5/2-1001(a)(2). Accordingly, Marissa Girard's Motion for Substitution of Judge Yu as a Matter of Right is **DENIED.**

2. Jane Girard is granted leave to file a fee petition pursuant to Supreme Court Rule 137 with respect to Marissa Girard's Motion for Substitution of Judge Yu as a Matter of Right. Marissa Girard shall have 7 days thereafter to respond.

3. Jane Girard shall have 14 days to respond to Kenton Girard's Motion to Terminate Proceedings.

4. Marissa Girard shall have 21 days to answer or otherwise plead to Kenton Girard's April 28, 2025 Crossclaim Directed at Marissa Girard.

5. This matter is set for trial on January 6, 7, and 8, 2026 starting at 10:30 a.m. in person in Courtroom 3005 on the following pleadings:



FILED DATE: 12/31/2025 11:38 AM   2015CD009633

a. Jane's May 27, 2022 Motion to Appoint a Parenting Coordinator and Compel Use of Our Family Wizard;

b. Jane's August 31, 2022, Motion to Compel Enrollment in Therapy (seeking reunification therapy for the family);

c. Kenton's September 7, 2022 Motion to Modify Parenting Time, Decision Making Responsibilities, and For Other Relief

d. Jane's September 20, 2022 Petition for Finding of Parenting Time Abuse directed against Kenton and Marissa;

e. Jane's November 1, 2022 Emergency Verified Petition for Rule to Show Cause for Adjudication of Indirect Civil Contempt and for Other Relief: Failure to Abide by the Terms of the Allocation Judgment

f. Jane's May 16, 2023 Petition for Parenting Interference

g. Kenton's July 11, 2023 Motion to Modify Joint Parenting Agreement and Custody Judgment;

h. Jane's July 13, 2023 Motion to Enforce the Joint Parenting Agreement;

i. Jane's August 1, 2023 Petition for Rule re July 25, 2023 Order;

j. Jane's March 13, 2024 Motion to Modify the Joint Parenting Agreement and to Implement the 604.10(b) Recommendations;

k. Jane's July 10, 2025 Motion for Adjudication for Direct Criminal Contempt and to Declare Kenton and Marissa Vexatious Litigants;

l. Jane's September 25, 2025 Fee Petition;

m. Jane's forthcoming petition for fees relating to Marissa Girard's Motion for Substitution of Judge Yu as a Matter of Right

n. Kenton's April 24, 2025 Motion to Disqualify Phyllis Amabile MD.

o. Kenton's April 24, 2025 Motion to Disqualify Beermann LLP.

p. Kenton's April 24, 2025 Motion to Terminate Parental Rights of Jane Girard

q. Kenton's April 28, 2025, DJ Crossclaim

Said proceedings may be conducted in a hybrid manner and any party/witness who wishes to appear remotely may seek leave to do so. Said trial dates shall not be

FILED DATE: 12/31/2025 11:38 AM   2015D009633

continued absent compelling circumstances.

6.  This matter is further set for status on Kenton Girard's decision as to whether to proceed on his crossclaim and hearing on Kenton Girard's Motion to Terminate Proceedings to **December 8, 2025 at 9:30 a.m. via Zoom** (*Meeting ID* 927 7769 4626; *Passcode* 228926).

7. Any pleadings not previously filed must be done with leave of court and properly noticed.

**ENTER:**

The Hon. William Yu

Date: October 7, 2025

*nunc pro tunc*

Order Prepared By
Matthew D. Elster
**BEERMANN LLP**
161 North Clark Street #3000
Chicago, IL 60601
312.621.9700
mdelster@beermannlaw.com
Firm No. 80095

Copies to
kg5252@yahoo.com
legaltma@gmail.com

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| JANE F. GIRARD, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Calendar 89 |
| KENTON GIRARD and | ) ) | Case No. 2015-D-009633 |
| MARISSA GIRARD, | ) ) | |
| Defendants. | ) ) | |
| KENTON GIRARD, | ) ) | |
| Crossclaim Plaintiff/ Cross Counter Defendant, | ) ) ) | **Claims of Marissa Girard Directed at Kenton Girard** |
| vs. | ) ) | |
| MARISSA GIRARD, | ) ) | |
| Crossclaim Defendant/ Cross Counter Plaintiff. | ) ) ) | |

## CLAIMS OF MARISSA GIRARD DIRECTED AT KENTON GIRARD

_____

**NOW COMES** Cross Counter Plaintiff MARISSA GIRARD, in pro se, and in support of her Claims against Cross Counter Defendant KENTON GIRARD, hereby states as follows:

### BACKGROUND STATEMENT

1.      Under these amorphous, abusive and morally bankrupt "legal" proceedings, accused child sex abuser Jane Girard has improperly required Marissa Girard's forced participation for 28 months and counting – in which time she has been subjected to no fewer than 20 motions seeking her fining or jailing by Jane's attorneys at Beermann LLP – for no ascertainable reason other than harassment.

2.      This matter has seen never-ending statute violations – e.g. the 18 month

1

start-to-finish deadline for custody matters under Illinois Supreme Court Rule 922 has been smashed at 45 months and counting, Marissa Girard remains unactioned with a pleading in abject violation of 735 ILCS 5/2-201(a) and the minor children's rights to notice and participation are patently disregarded in a comical affront to the Illinois Crime Victims Bill of Rights.

3. These proceedings have further given rise to myriad constitutional torts – e.g. a criminal proceeding has been ordered in Judge William Yu's family court against Marissa Girard without a charging instrument or a jury of peers or a state prosecutor, and Judge William Yu is manifestly disqualified (by virtue of defending multiple pending federal lawsuits brought by the parties and the minor children) and incapable of impartiality, but stubbornly and desperately holds onto his role as presiding judicial officer (as he most certainly been ordered to do – irrespective of the facts and the law – by his boss Regina Scannicchio, who is also defending the same federal lawsuits pending against Judge William Yu).

4. These observations have been echoed loudly by United States District Judge Rebecca Pallmeyer, who has found **credible evidence of judicial bribery by Beermann LLP under these proceedings,** pursuant to her memorandum opinion dated August 12 2025 under *Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois, in which she has invited the plaintiff in that matter (Kenton Girard) to move forward with his civil RICO case against the senior Beermann LLP attorneys who have been calling the shots in this matter (Enrico J. Mirabelli and John M. D'Arco, whose father was convicted of judicial bribery in the Northern District of Illinois in the 1990s). Furthermore, on December 5 2025, Marissa filed a **Petition for Writ of Certiorari** with SCOTUS, Case No. 25-707, challenging the Seventh Circuit's restrictive interpretation of 28 U.S.C. § 1443(1) civil rights removal jurisdiction. That petition argues that defendants may remove state court proceedings to federal court when the

2

state action itself violates constitutional rights or federal law—precisely the situation presented here, where state court judges are actively violating Marissa's constitutional rights, ADA rights, and engaging in retaliation for her federal civil rights lawsuit. The petition remains pending before the Supreme Court.

5. According to a recent *nunc pro tunc* Trial Order[1] signed by the de facto disqualified[2] Judge William Yu – whose installation by Presiding Judge Regina Scannicchio squarely depends upon ** **missing** ** judicial transfer orders between Calendars 1 and 51 dating from January 14 2025 and January 23 2025 which were nowhere reduced to writing much less filed on the docket – the trial syllabus includes without limitation the hearing of various custody-related motions[3] propounded by Jane Girard and her attorneys at Beermann LLP *and a criminal proceeding against Marissa Girard.*

6. In case of any doubt about the manifest intent by Beermann LLP to transform this alleged custody matter[4] into a criminal trial wherein family court Judge William Yu plays criminal jurist, according to open court testimony memorialized by a court reporter on February

---

[1] Like virtually all other aspects of these proceedings, the legality of the court order is dubious. A court date was held on October 3 2025 with Judge William Yu and approximately *three weeks later* an order from that court date was produced and backdated to October 7 2025 and containing directives and decisions not discussed or entertained under the October 3 2025 court date.

[2] Under Illinois Judicial Canon 2.11, a judge may not preside when he has more than a de minimis personal interest in the outcome of the proceedings. Here, Judge Willam Yu is defending a federal lawsuit filed by Marissa Girard before District Judge Andrea Wood and another federal lawsuit filed by the concerned minor children hereunder currently pending before District Judge Sara Elis.

[3] Incredibly, the minor children at issue attain majority age in just over 30 days time. The misguided notion that custody related motions are not mooted at such late date is moreover confirmed by case law, which affords mature minors significantly greater say over their fate. Here, the minor children literally fled the home of their biological mother in August 2022 and have not spent a day with Jane Girard since. The minor children are pursuing a civil lawsuit against Jane in the Law Division for battery, sexual assault, IIED and other related causes of action under *Minor Child Gw v. Jane Girard*, Cook County Case No. 2024-L-012053. Plaintiff Jane Girard recently lost her motion to dismiss in that matter, pursuant to a written memorandum signed by Judge Kathy Flanagan dated December 30 2025.

[4] We say "alleged" because there are various motions propounded by Beermann LLP which seek various custodial changes of the inch-from-majority-age minor children, however unlike all other trials in the United States, there are no pleadings written, communicated or otherwise filed against Marissa Girard. As of the date of this filing, Marissa Girard neither knows what the purpose her participation relates to in this matter, nor does she have any clue about how to prepare her defenses thereunder.

14 2025, Beermann LLP Attorney Enrico J. Mirabelli stated very clearly and emphatically that the "mystery trial" would consist in a criminal contempt proceeding against Marissa Girard.

7.     All the while, Cross Counter Plaintiff Marissa Girard has been used and abused as a pawn of Beermann LLP to seek the capitulation of her husband Kenton Girard to payment of their extortionate demands for astronomical legal fees and billings. The history is made all the worse wherein Marissa is a disabled Hispanic/Latinx person who suffers from two ADA qualifying disabilities (PTSD and interstitial cystitis) which render (a) dealing with legal proceedings a serious affront to her physical health and well-being, (b) physically appearing in court an  impossibility for her, and (c) even Zoom participation in excess of 30 minutes threatens acute short term memory loss, aphasia and decreases locomotive capability.

8.     In spite of this, the so-called courtroom disability coordinators have weaponized reasonable accommodation under the ADA and the Cook County family court system has directed wave after wave  of intersectional discrimination against her both because of her racial identity and her disabilities. Most recently, Beermann LLP has commanded Marissa to appear physically in person for the three-day trial.

9.     Through it all, Marissa's husband Kenton Girard has always had a common law duty to look after the welfare and well-being of Marissa, however he has manifestly breached this duty wherein he has not reasonably availed of his position in the litigation to bring an end to Marissa's forced participation before the Cook County Domestic Relations Division.

## PARTIES

10.     Cross Counter Plaintiff Marissa Girard is the current wife of Kenton Girard. Marissa is a Hispanic/Latinx person and suffers from PTSD and interstitial cystitis, both of which are ADA qualifying disabilities.

4

11.     Cross Counter Defendant Kenton Girard is the biological father of the minor children hereunder, namely Gwen Girard and Grace Girard, fraternal twins both who will attain majority age in just over 30 days hence.

### FEDERAL QUESTION JURISDICTION

12.     This pleading raises substantial federal questions including:

> a. Violations of constitutional rights under color of state law (42 U.S.C. § 1983);
> b. Violations of Title II of the ADA (42 U.S.C. § 12131 *et seq*.);
> c. Declaratory relief regarding violations of constitutional torts;
> d. Declaratory relief regarding violations of the ADA;
> e. Injunctive relief regarding compliance with the ADA; and
> f. Civil rights deprivations actionable in federal court.

13.     As stated in the **Consent to Federal Forum** at the end of this pleading, Marissa Girard freely consents to federal court jurisdiction over these claims and welcomes federal court oversight, supervision and adjudication hereunder.

14.     As described hereunder, state court remedies have proven woefully inadequate, as evidenced by:

> a. Judge O'Connor's sanctions (vacated as void) for federal court access;
> b. Judge Yu's refusal to recuse despite his  manifest disqualification;
> c. 28 months of proceedings without a pleading;
> d. Systematic denial of ADA accommodations; and
> e. Wildly unstructured criminal proceedings in affront to the Sixth Amendment.

**Marissa was joined – and forced to suffer for 28 months and counting – without a pleading.**

15.     Literally dozens of filings in this litigation have addressed the lack of pleadings filed by the Plaintiff Jane F. Girard. Egregiously, Marissa Girard – who neither has parenting responsibilities nor any biological connection to the minor children Gwen and Grace – has been forced to endure more than twenty (20) inexplicable, harassing and abusive motions to hold her in contempt or to jail her filed by Beermann LLP on behalf of Plaintiff Jane Grard without ever having been actioned with a pleading at the time of her (deficient) joinder in plain violation of

statutory requirements and constitutional safeguards.

16.     Under 735 ILCS 5/2-201(a), "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint." The recipe here in our state wherein a proceeding starts with the first step of filing a pleading has been universally adopted by the courts throughout our land. For example, in all District Courts, pursuant to Fed. R. Civ. Pr. 3, "A civil action is commenced by filing a complaint with the court."

17.     Such a requirement is particularly poignant with respect to Marissa, who was not a party to the Girard dissolution of marriage proceedings which commenced in 2015.

18.     To be specific on or around June 2023, Marissa became aware that a summons seeking to join her as a third party respondent was filed with the Cook County clerk on May 26 2023, and further such summons contained language "The Petitioner has filed a legal proceeding against you for one or more of the following: ["Other: Motion to Add Third Party"]. The referenced Motion to Join Third Party was filed with the clerk on March 8 2023. Some time later, after Marissa's erstwhile attorney entered an appearance on her behalf on or around June 2023, she started receiving the first of a series of motions penned by Respondent's attorneys at Beermann LLP seeking to find her in contempt and to fine or jail or otherwise sanction her.

19.     When Marissa's erstwhile attorney (Attorney Pfanenstiel) entered an appearance on Marissa's behalf under the Domestic Relations matter, the only paper which had been provided which was directed at her was the summons. The Motion to Join Third Party, as previously explained, specifically does not contain Marissa's name in the caption. Moreover, the Motion to Join Third Party – being a request transmitted to the court to allow Marissa's joinder – cannot possibly be construed as a pleading.

20.     Indeed in a lawsuit, formal writing can be divided into two categories: pleadings

and motions. A pleading demands that the other party do something, while a motion requests that the judge in the case do something. Given that the Motion to Join Third Party did not even include Marissa in the caption, and that it was obviously calculated to obtain court permission to proceed to file a pleading against Marissa (which did not actually come to pass), this set of circumstances is violative of Marissa's constitutional rights to due process and fair notice.

**The harassment has been going strong for 28 months.**

21.     For the last twenty-eight (28) months, Marissa Girard has been trying to discern why Beermann LLP repeatedly insists that her joinder in the domestic relations matter is essential and that she is an indispensable party. She has yet to receive notice of the claims which lie against her, or to adduce defenses thereto. Simply put, Marissa has not been impleaded under this matter. The action against her has not commenced, irrespective of the pile of vexatious motions for contempt and sanctions which followed her defective joinder.

22.     What is more is the Domestic Relations court is a court of equity, and the likelihood of equitable relief is rapidly eroding toward zero given that the minor children are nearly of majority age, are high-functioning and high-performing students and entrepreneurs filing their own lawsuits and legal papers. Indeed the minor children already run a multi-million dollar business and would likely be already emancipated to sign their own business contracts under Cook County Case No. 2024COMS000016 if Jane's attorneys at Beermann LLP did not engage in non-stop delay tactics in that matter (e.g. raising frivolous discovery disputes).

23.     Attorney Elster's attacks have taken on an unusual *ad hominem* tinge. In his opposition paper filed on February 12 2025 to Marissa's petition seeking removal of Judge William Yu pursuant to 735 ILCS 5/2-1001(a)(3), Attorney Elster writes at p. 1 that "[Marissa] refuse[s] to appear or participate in the proceedings when it does not suit [her]".

7

24.     In the same breath he defends having "properly noticed up several motions before [the Domestic Relations Court] on February 7, 2025 at 10:00 a.m., providing both Kenton and Marissa with proper and ample notice … [per] her supposed doctor's orders" (emphasis supplied). In reality, a raft of notices of various motions to quash and to strike Marissa's claims were supplied to Marissa on February 6 2025, less than 24 hours prior to the hearing set for February 7 2025 by Judge Yu. Under Cook County rules, notices for presentment of motions must be tendered at least two court days prior to presentment.

25.     Moving on, Attorney Elster at p. 8 states "Marissa's lack of good faith is also impossible to ignore. She does not even attempt to satisfy the legal requirements for SOJ petitions but, instead, resorts to sensational accusations of corruption coupled with **unsubstantiated disability claims**." (emphasis added) Continuing at p. 10, Attorney Elster further writes "this Court need not—and should not—allow Marissa to further delay these proceedings through unscrupulous litigation tactics." In sum, Attorney Elster defames Marissa as not acting in good faith, as exercising improper litigation tactics, or advancing claims not grounded in fact. He does not even attempt to substantiate his character assassination of Marissa.

26.     Throughout the proceedings, moreover, Attorney Elster has "padded the record" by slanting prepared orders to the consistent and unearned advantage of his client Jane Girard. For example, on numerous occasions he has inserted language – blindly signed off by the seated judicial officer – to the effect that Marissa's papers are "frivolous" or "vexatious" or that Rule 137 Sanctions are awarded, when transcripts of the court dates demonstrate no such pronouncement by the judicial officer or requisite reasoned finding for imposition of sanctions.

27.     Along the same lines, Attorney Elster has shamelessly utilized his role as the preparer of court date orders to add or subtract agenda items serving his client's wishes. In one

recent egregious example, Marissa prepared a Rule 137 Motion against Attorney Elster, and Attorney Elster conveniently omitted consideration of that paper from the successive court date – over the stated and logged objections of Marissa over email. As always, the seated judicial officer signs whatever Attorney Elster puts forward – irrespective of the judicial record of the proceedings, the right to be heard, the right to a remedy and so forth.

**Judge William Yu continues to perpetuate fictitious jurisdiction.**

28.     As alluded *supra*, Cook County Domestic Relations Presiding Judge Regina Scannicchio's appointment of Judge William Yu as the presiding judicial officer is a legal fiction. Her appointment references two judicial transfer orders between Calendars 1 and 51 which predated his seating in this matter. Until those orders are located and filed on the docket, there is currently no way to trace Judge William Yu/Calendar 89's jurisdiction hereunder. When alerted to this quagmire, Judge Yu's response has consistently been evasion, or simply stating that "he will deal with jurisdictional issues at the trial."

29.     Equally troubling, Judge Yu was embattled with a petition seeking his removal for cause filed by Marissa Girard in February 2025. That petition was ultimately allegedly resolved by Judge Robert W. Johnson – who was judicially sidelined under the operation of 735 ILCS 5/2-1001(a)(3) when he denied the petition against Judge Yu. From that point of view on its own, Judge William Yu has not been statutorily returned to his role of presiding judicial officer.

30.     Finally, owing to his prominent role as the starring defendant under *Girard v. Fernandez et al.*, Civil Action No. 1:25-00136, N. Dist. Illinois and Minor Child Gw v. Scannichio et al., Civil Action No. 1:25-cv-04551, N. Dist. Illinois, even under constitutional standards Judge William Yu is disqualified from presiding. All orders and directives taken after the operative date of his disqualification are void and penned without jurisdiction.

31.     Separate and apart from his disqualifying role as federal defendant, Judge Yu is disqualified for the separate reason that he appears obviously committed to unequal treatment of the parties. He gives significant latitude to Beermann LLP attorneys, quickly accepting their characterizations in all instances wholly without critical examination.

32.     Judge Yu furthermore repeatedly cuts off all other parties and opposing counsel. For example, Marissa's previous attorney Robert Holstein informed Judge Yu as to the complete absence of pleadings against Marissa, and he indicated he would deal with that at the trial. Similarly, Attorney Toma Makedonski walked Judge Yu through the lack of triable issues of fact, yet Judge Yu inexplicably refused to consider motions for summary judgment.

33.     The minor children have been furthermore with a voice in the proceedings wherein their Child Representative Joel Levin resigned in August 2024. Judge Yu is manifestly unconcerned about the well-being and best interests of the children, in transparent disregard for the requirements set forth under the IMDMA. Furthermore, wherein State's Attorney Mary Stein called Jane Girard in for questioning about her long-running sexual abuse of the minor children in September 2023 and Jane asserted her right against self-incriminatino, Judge Yu knowingly disregards the basic requirements of notice and participation according the minor children under the Illinois Crime Victims Bill of Rights.

**The "mystery trial" portends grave harm to Marissa.**

34.     None of the papers in the syllabus for the "mystery trial" seek a finding against Marissa, or otherwise seek relief from Marissa. No charges have been reduced to writing, no jury has been scheduled for empaneling, There is no state prosecutor in sight and unbelievably this is all scheduled to take place in the family law courtroom of Judge Yu, who is not a criminal judge.

35.     The problems besetting the "mystery trial" are legion. Criminal contempt cannot

be initiated by a private party: due process and adequate notice require that criminal contempt be initiated by the court. The prosecutor's office must be engaged from investigation to the bill of charges or indictment, to the convening of pre-trial hearing and the ultimate trial.

36.     Furthermore, an order to a criminal defendant to appear in court to face questioning and to be present before the fact finder, under a hearing in which his or her liberty is at stake *requires form orders bearing the official seal of the state*. Such orders for criminal process must be prepared by a prosecutor, not by a private attorney as here.

37.     Summary proceedings under a contempt charge wherein the judge acts as the fact finder are constitutionally sound only wherein the judge is a direct witness to the alleged contempt. The instant scenario is likely an "indirect criminal contempt" setup, because the judge has not signaled that he is a percipient witness.

**Kenton has failed Marissa.**

38.     By allowing these proceedings to advance without making sufficiently strong efforts to settle or to otherwise end the proceedings, Kenton has exposed Marissa to undue stress, anxiety, disquiet, the real prospect of criminal confinement and sentence and moreover her counseling practice revenue has suffered under the need to spend exorbitant time and resources on her defense hereunder. Her physical conditions have worsened and she is suffering from chronic memory loss, insomnia, locomotive issues and recurring aphasia.

39.     Furthermore, by choosing the "mystery trial" over settlement, Kenton is exposing the marital property to significant risk of dissipation from Beermann LLP. As a financial professional and a businessman, Kenton is aware of this risk and has elected to gamble with Marissa's well-being, livelihood and potentially even her survival.

40.     The claims asserted herein against Kenton are genuine disputes arising from his

failure to protect Marissa's interests in these proceedings and present substantial foundation. Their interests hereunder are extremely divergent: Marissa's interests (ending her forced participation in these proceedings, protecting her health, and avoid "kangaroo" criminal proceedings) are fundamentally orthogonal to Kenton's interests (protecting the children, holding Jane accountable, pursuing claims against Beermann LLP, etc).

41.    Simply put, Kenton has prioritized litigation strategy over Marissa's well-being and her best interests. As a direct result of this posture, Marissa has suffered documented harms (exacerbation of PTSD and interstitial cystitis, emotional distress, loss of income, threat of incarceration) all of which could have been prevented or seriously mitigated had Kenton taken decisive action to have her removed from these proceedings. Furthermore, under Illinois common law, Kenton owes Marissa an unambiguous duty of care as her husband; this breach is actionable independent of the federal claims.

**Kenton is moreover a willful participant in the state court's abuse of Marissa.**

42.    Based upon text messages received from Beermann LLP attorney Enrico J. Mirabelli between Fall 2023 and Summer 2024, as well as an email message received from Jane Girard from June 13 2024 also sent to her legal team at Beermann LLP, Marissa learned that she was an agreed hostage to the custody proceedings wherein her joinder would simultaneously allow Beermann LLP to dramatically increase its  legal billings to Jane Girard and delay the ultimate trial under the custody proceedings (and thus provide more opportunities for Kenton to strategically minimize the fallout from the proceedings for himself, personally).

43.    Upon information and belief, Enrico J. Mirabelli and Kenton Girard came to an agreement whereby  Kenton would not specifically seek to have Marissa removed from the custody  proceedings. In exchange, Beermann LLP would significantly string out the trial date as

long as possible. The problem, as already noted, is that each day of Marissa's forced participation under the custody proceedings implicated constitutional torts against her because she was never actioned with a pleading, in violation of due process requirements under the Fourteenth Amendment. As previously discussed the constitutional harms multiplied e.g. wherein the criminal proceeding set to take place January 6-8 2026 implicates Sixth Amendment violations.

44.     The email message from Jane Girard of June 13 2024 demonstrates that: (1) Jane wanted Marissa to remain in the case for strategic litigation purposes; (2) Beermann LLP planned to weaponize Marissa's forced joinder by threatening her with fines and jailing; (3) Beermann LLP's entire legal team (notably Enrico J. Mirabelli, leading the charge) was aware of and facilitating this exploitation; and (4) Marissa was being exploited to manufacture unfair litigation advantage. Without the illicit side agreement between Enrico Mirabelli and Kenton Girard, Marissa would not have to endure 28 months of forced participation in the custody proceedings under which she is neither a biological parent nor holder of parental rights.

45.     Upon  information and belief, without the agreement between Enrico Mirabelli and Kenton Girard, the custody matter should have resolved within about 6 months of her joinder, because under Illinois Supreme Court Rule 922 the custody matters are strictly limited to 18 months in duration (and Marissa was brought in as a defendant after 12 months). Furthermore, if Attorney Mirabelli knew Kenton was playing the role of a true adversary, he arguably would not have joined Marissa in the first place knowing that strong opposition to her joinder would be thereafter litigated in the state court.

**The attorneys from Beermann LLP  moreover conspired with the judges.**

46.     As has already been established under *Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-06882, N. Dist. Illinois, the modus operandi of Beermann LLP is to engage in

judicial bribery to ensure outcomes favorable for their clientele. See the Memorandum Opinion of District Judge Rebecca Pallmeyer dated August 12 2025.

47.     This case is part of the larger pattern of judicial bribery by Beermann LLP. From Judge William S. Boyd (recused himself immediately after being accused of bribery in court papers) – who approved the defective joinder of Marissa under the custody proceedings in the first place – to Judge Renee Goldfarb (recused herself immediately after being accused of bribery in court papers) to Judge William Yu, the instant proceedings have been manipulated by Beermann LLP, especially its senior partners Enrico J. Mirabelli and Matthew D. Elster.

48.     Upon information and belief, Judge William Yu has also accepted illegal consideration from Beermann LLP in exchange for (a) clinging onto the judge's seat in these proceedings, and (b) rendering favorable rulings for Jane Girard. Indeed, there is no plausible explanation for why Judge Yu would insist on presiding wherein he is manifestly disqualified from doing so by virtue of current defending allegations in not one but two separate federal lawsuits filed by Kenton and the minor children.

49.     Upon information and belief, Beermann LLP Attorneys Mirabelli and Elster have specifically and repeatedly instructed Judge Yu to sustain Marissa's statute-violating and Constitution-offending joinder hereunder. Supporting evidence of this conspiracy is adduced wherein (a) Attorneys Mirabelli and Yu have repeatedly engaged in ex parte communications with Judge Yu, only for a court order to emerge with findings not announced or explicated in open court, and (b) Attorneys Mirabelli and Yu have successfully demanded Judge Yu to hold in absentia court dates without notice to Marissa Girard, and (c) Attorney Elster has demonstrated an unending pattern of padding the record with court orders containing findings and directives not announced in  open court.

14

50.     Further evidence of the conspiracy is found wherein Judge Yu has repeatedly sanctioned Marissa Girard, most recently for propounding a paper seeking his removal as of right immediately upon his (improper) return from being judicially sidelined under a petition seeking his removal for cause.

### COUNT I – DECLARATION AS TO CONSTITUTIONAL VIOLATIONS

51.     Cross Counter Plaintiff Marissa Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

52.     Marissa's rights under the First, Fifth, Sixth and Fourteenth Amendments have been violated.

53.     To seek redress from these violations, Marissa has been litigating pro se under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, N. Dist. Illinois since January 2025.

### COUNT II – DECLARATION AS TO ADA VIOLATIONS

54.     Cross Counter Plaintiff Marissa Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

55.     Marissa's rights under Title II of The Americans with Disabilities Act of 1990 have been violated wherein she was denied reasonable accommodation for an extended period of time under the proceedings, and wherein she has been commanded to stand trial in person.

56.     To seek redress from these violations, Marissa has been litigating pro se under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, N. Dist. Illinois since January 2025.

### COUNT III – DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983

57.     Cross Counter Plaintiff Marissa Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

58.     Being that Marissa Girard is neither a biological parent nor a holder of parental

rights hereunder, she is not vested with any rights or responsibilities under the Illinois Marriage and Dissolution of Marriage Act ("IMDMA") as codified under 750 ILCS 5/1 *et seq* as it is specifically applied to govern a custody proceeding as here.

59.     Not only was Kenton aware that Marissa Girard has been a hostage to these proceedings for the last 28 months, but it has played out exactly according to his illicit agreement reached with Beermann LLP attorney Enrico J. Mirabelli. Kenton has turned a blind eye to Marissa's improper joinder (and her resulting constitutional deprivations) in exchange for a slow-walked trial in the custody proceedings. By agreement, Kenton has refused to offer a "lifeline" to Marissa Girard consisting in diligence and motion practice with respect to taking affirmative steps to extricating her from the jaws of these proceedings.

60.     Instead of exercising the requisite diligence (whether via settlement negotiations, motion practice, pleadings, or otherwise), Kenton Girard has effectively been a vessel of Beermann LLP by going along with the seemingly unending campaign by the judicial officers and Beermann LLP attorneys – effected under color of state law and the auspices of the Illinois Marriage and Dissolution of Marriage Act – hereunder to sustain Marissa's status as a defendant.

61.     Upon each such occasion wherein Marissa has demanded Kenton take necessary and appropriate action to terminate her forced participation hereunder, his response has been that she must "play out her role under the proceedings until the end." Wherein Marissa has further demanded clarity on when the proceedings reach "the end", Kenton's guidance has been consistently when the (twin) minor children hereunder attain majority age. Kenton has further directed Marissa that her failure or refusal to go along with the proceedings until the end would almost surely result in her incarceration at the request of Cook County judicial officers.

62.     As a direct and proximate result of Kenton's decision to enter and honor the illicit

16

agreement with Beermann LLP to consistently and repeatedly force Marissa to do her part under the proceedings, she has suffered significant due process violations including *inter alia*:

    a. Violation of her right to fair notice of the pleadings against her;
    b. Subjecting her to more than twenty (20) contempt motions without notice of claims;
    c. Awaiting a criminal proceeding without charging instrument, prosecutor, or jury;
    d. Denying her the ability to prepare a defense due to the sheer absence of pleadings; and
    e. Permitting a disqualified judge (Judge Yu) to preside over the proceedings.

63.    As a proximate result of Kenton's decision to consistently and repeatedly force Marissa to do her part under the proceedings, she has suffered significant violations of her rights under Title II of the ADA, 42 U.S.C. § 12131 *et seq*. including the following:

    a. Systematically denying reasonable accommodations for Marissa's ADA disabilities;
    b. Ordering her to appear physically in court despite medical impossibility;
    c. Weaponizing the accommodation request process to create additional barriers; and
    d. Subjecting her to discrimination based on both disability and race (Hispanic/Latinx).

64.    As a direct and proximate result of Kenton's decision to consistently and repeatedly force Marissa to do her part under the proceedings, she has suffered significant violations of her constitutional right to an impartial tribunal wherein Judge William Yu has stubbornly refused to recuse himself and the Cook County judicial apparatus has allowed him to preside while he is obviously conflicted defending charges two separate pending federal lawsuits brought by Marissa and the minor children hereunder.

65.    As a direct and proximate result of the various above enumerated constitutional and federal violations, Marissa has suffered physical harm (exacerbation of PTSD and interstitial cystitis, memory loss, aphasia, locomotive degradation), emotional distress and anxiety, loss of income from her counseling practice, and fear of continuing deprivations of her liberty and further deterioration of her physical, financial, emotional and psychological well-being.

## COUNT IV – NEGLIGENCE

66.     Cross Counter Plaintiff Marissa Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

67.     Kenton should have taken action to have Marissa removed as a party hereunder because (a) her status as neither a biological parent nor a holder of parental rights renders her joinder hereunder harassment, and (b) she was actioned without a pleading in violation of the right to fair notice protected under the Fifth and Fourteenth Amendments of the Constitution. Further knowing that other constitutional rights and her rights under the ADA were being violated and that those violations would manifest in physical, emotional and financial forms all damaging to her best interests and well-being.

68.     Further, knowing the sensitivity of Marissa's infirm nature under PTSD and interstitial cystitis, Kenton should have acted quickly to quell her forced participation under these abusive and Constitution-offending and ADA-violating proceedings.

69.     Instead, Marissa has been forced to fend for herself. Throughout this litigation she has been lumped together with Kenton as if their interests hereunder were identical. Nothing could be further from the truth.  As a proximate result of Kenton's breach of his duty to protect Marissa and the 28 months of forced participation under these proceedings, Marissa's health has declined and her conditions have exacerbated and anxiety and distress have resulted and her counseling practice revenues have reduced. The filing of her federal lawsuit removes any doubt about the anxiety caused to Marissa by the constitutional torts and ADA violations.

**WHEREFORE** Cross Counter Plaintiff Marissa Girard prays this Court grant the following relief:

1) Compensatory damages under 42 U.S.C. § 1983 in an amount to be determined;
2) Compensatory damages resulting from negligence in an amount to be determined;
3) Injunctive relief ordering the provision of reasonable accommodations as required under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*;
4) Attorneys fees and costs under 42 U.S.C. §1988 and under 29 U.S.C. §794a(b);
5) Nominal damages for violations of constitutionally protected rights; and
6) Such other relief that this Court may deem just, equitable and proper.

DATED: January 5 2026                    Respectfully submitted,


                                         MARISSA GIRARD

                                    By:  */s/ Marissa Girard*
                                         965 Forestway Drive
                                         Glencoe, IL 60022
                                         marissadakis@gmail.com
                                         Tel: 773-425-4393


### CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 5th day of January 2026 by email to the attorneys who have entered their appearances hereunder as well as to Kenton Girard, who is pro se.

                                         */s/ Marissa Girard*
                                         Marissa Girard

## JURY DEMAND

Cross Counter Plaintiff Marissa Girard hereby demands a trial by jury on all issues of fact stated herein.

## CONSENT TO A FEDERAL FORUM

Under penalties as provided by law pursuant to Sec. 1-109 of the Code of Civil Procedure, the undersigned certifies that she freely consents to litigating these proceedings in a federal forum, should the court or any party wish to move these proceedings to federal court.

Marissa Girard specifically requests federal court jurisdiction because:

1. These claims arise under the Constitution and federal law (including 42 U.S.C. § 1983, Title II of the ADA);
2. State courts have proven unable or unwilling to protect federal constitutional rights, as evidenced by Cook County Judge O'Connor's recently-vacated sanctions punishing federal court access;
3. State court judges who are defendants under two separate pending federal lawsuits filed by myself and the concerned minor children, as discussed *supra*, cannot impartially adjudicate these claims.
4. Federal supervision is necessary to prevent ongoing constitutional violations;
5. The systematic nature of these violations demands federal intervention.

Marissa Girard expressly waives any objection to federal jurisdiction and affirmatively invokes federal court authority to remedy these affronts to the Constitution and federal law.

/s/ Marissa Girard
January 05 2026

FILED
1/15/2026 10:54 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 89
36213184

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

*IN RE THE FORMER MARRIAGE OF*
KENTON GIRARD,                                  )
                                                )
                 Petitioner,                    )
                                                )        **Calendar 89**
vs.                                             )
                                                )
JANE F. GIRARD,                                 )        Case No. 2015-D-009633
                                                )
                 Respondent.                    )

**PETITIONER'S NOTICE OF USCA JURISDICTION**

Now comes Petitioner KENTON GIRARD, in pro se, and raises judicial notice as to the following circumstances:

1.      These proceedings were removed to the Northern District of Illinois under Civil No. 1:26-cv-00042 on January 5 2026 pursuant to 28 USC §§ 1441 and 1443 – noting that § 1443 offers a right of immediate appellate review of a remand order – where those proceedings were presided over by District Judge Sharon Johnson Coleman.

2.      On January 12 2026, District Judge Sharon Johnson Coleman requested the Executive Committee of the Northern District of Illinois to transfer jurisdiction to District Judge Jeremy C. Daniel (**Exhibit A**).

3.      That transfer was improper, however, because the cited Northern District of Illinois Local Rule 40.3(b)(2)[1] was inapplicable, because District Judge Jeremy C. Daniel did not dismiss any case involving any of the parties hereunder. Instead, he remanded Civil No.

---

[1] The text of the cited subsection reads: *Re-filing of Cases Previously Dismissed.* **When a case is dismissed with prejudice or without,** and a second case is filed involving the same parties and relating to the same subject matter, the second case shall be assigned to the judge to whom the first case was assigned. The designation sheet presented at the time the second case is filed shall indicate the number of the earlier case and the name of the judge to whom it was assigned. (emphasis supplied)

1:25-cv-04586 on May 6 2025 pursuant to the removal of Marissa Girard filed on April 28 2025.

4.      The transfer was also improper because District Judge Daniel was disqualified from presiding over Civil No. 1:26-cv-00042 under 28 U.S.C. §§ 455(a) and (b), as outlined under Petitioner's Motion to Vacate Transfer to District Judge Daniel under docket entry 23.

5.      In a clear demonstration of his impermissible bias against Kenton Girard, District Judge Daniel struck the briefing schedule put in place by District Judge Coleman as his first act under these proceedings on January 13 2026, per docket entry 21. Less than 18 hours later, in the morning of January 14 2026 he ordered remand *and sanctions* without briefing, without explanation, per docket entry 22.

6.      Shortly after the conclusion of the court date, at approximately 12:05 PM on January 14 2026, Kenton Girard filed his Notice of Appeal under Civil No. 1:26-cv-00042 (**Exhibit B**). Once a notice of appeal is filed, it is well-settled that the district court loses all jurisdiction over the matter. Put differently, at the moment the Notice of Appeal was filed, jurisdiction moved from the Northern District of Illinois to the United States Court of Appeals for the Seventh Circuit.

7.      Pursuant to 28 U.S. Code § 1447(c), "a certified copy of the order of remand shall be mailed by the clerk to the clerk of the state court. The state court may thereupon proceed with such case."

8.      On January 15 2026, a letter signed by the federal clerk for the Northern District of Illinois was filed in the federal docket under Civil No. 1:26-cv-00042 alerting the reader to the remand order. However, that letter was signed without jurisdiction and is therefore void[2]. Under *City of Martinsville v. Express Scripts, Inc.*, No. 24-1912 (4th Cir. 2025), per Supreme Court

---

[2] Incidentally, the Cook County Circuit Court has not yet received the letter, because it is not yet published on the state court docket.

precedent, that notice of appeal suspended the district court's power to act, requiring that the district court halt all proceedings related to the appeal. *City of Martinsville v. Express Scripts, Inc.*, No. 24-1912 (4th Cir. 2025) (citing to: *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023); *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).

9.      No further proceedings in the state court can take place until the appeal is completed and the mandate from the Seventh Circuit is duly transmitted hereunder.

**Dated: January 15, 2026**                    Respectfully submitted,

                                        KENTON GIRARD

                              By:      */s/ Kenton Girard*
                                        965 Forestway Drive
                                        Glencoe, IL 60022
                                        kg5252@yahoo.com
                                        Tel: 773-575-7035

**CERTIFICATE OF SERVICE**

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 15th day of January 2026 by email to the attorneys who have entered their appearances hereunder as well as Presiding Judge Regina Scannicchio.

                                        */s/ Kenton Girard*
                                        Kenton Girard

3

## EXHIBIT A

**United States District Court**
**Northern District of Illinois**

In the Matter of

Jane F. Girard

         v.

Kenton Girard et al

District Judge Jeremy C. Daniel

Case No. 26-CV-42

Designated Magistrate Judge
Gabriel Fuentes

### TRANSFER OF CASE TO THE EXECUTIVE COMMITTEE
### FOR A REASSIGNMENT

The above captioned case is currently pending on my calendar. I request the Executive Committee that this case be reassigned to the calendar of Judge Jeremy C. Daniel. The reason for my request are indicated on the bottom of this form.

**Judge Sharon Johnson Coleman**

Date: Monday, January 12, 2026

### Reason(s) For Recommendation:

- 40.3(b)(2) This case appears to involve the same parties and subject matter as case number 25-cv-4586 assigned to the calendar of Judge Jeremy C. Daniel and dismissed prior to the filing of this case.

4

## EXHIBIT B

$\mathcal{I_c}$

Case: 1:26-cv-00042 Document #: 25 Filed: 01/14/26 Page 1 of 2 PageID #:322

THE UNITED STATES DISTRICT COURT  **F** **I** **L** **E** **D**
FOR THE NORTHERN DISTRICT OF ILLINOIS
**EASTERN DIVISION**                              JAN 1 4 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JANE F. GIRARD,

        Plaintiff,                    Civil No.    1:26-cv-00042

        v.                            District Judge Jeremy C. Daniel

KENTON GIRARD and                    Mag. Heather K. McShain
MARISSA GIRARD,

        Defendants.

### NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Kenton Girard, defendant in the above named case,

hereby appeals to the United States Court of Appeals for the Seventh Circuit from:

    a.    the order of remand entered by District Judge Daniel in this matter on January 14

2026 under docket entry 22;

    b.    the imposition of sanctions in the form of fees and costs entered by District Judge

Daniel in this matter on January 14 2026, also memorialized under docket entry 22;

    c.    the exercise of jurisdiction by District Judge Daniel whilst he was disqualified

from presiding hereunder, consisting in (i) the decisions he made on January 13 2026 as

memorialized under docket entry 21 (wherein he struck the previous briefing schedule and

scheduled a "status hearing" on January 14 2026) and (ii) convening a court date on January 14

2026 in which he ordered remand and sanctions as memorialized under docket entry 22;

    d.    the refusal by District Judge Daniel to allow a briefing schedule under Plaintiff

Jane Girard's motion for remand, wherein (i) he struck the briefing schedule put in place by the

5

previous district judge on January 13 2026 as memorialized under docket entry 21, and (ii) he

ordered remand and sanctions on January 14 2026 as memorialized under docket entry 22; and

    e.    the misidentification of the scheduled court date on January 14 2026 as a "status

hearing" by District Judge Daniel on January 13 2026 as memorialized under docket entry 21

wherein during the "status hearing" on January 14 2026 District Judge Daniel forced Kenton

Girard – who is pro se – to mount oral argument on Plaintiff's motion for remand without any

reasonable opportunity for a pro se litigant to duly prepare for such presentation.

**Dated: January 14 2026**                Respectfully submitted,

                                              Kenton Girard, In Pro Se
                                              965 Forestway Drive
                                              Glencoe, IL 60022
                                              Tel: (773) 575-7035
                                              kg5252@yahoo.com

              By:    /s/ Kenton Girard

## CERTIFICATE OF SERVICE

    The undersigned certifies that this paper and all attachments were (a) electronically filed with the clerk of this Court on January 14 2026, (b) provided via email to the attorneys who have entered their appearances in this matter per the contact details listed below, and (c) provided via email to the pro se parties hereunder per the contact details listed below:

**Electronic Service on Attorneys**

mdelster@beermannlaw.com
kpaige@beermannlaw.com
    for Plaintiff Jane F. Girard

**Electronic Service on Pro Se Parties**

marissadakis@gmail.com
    for Defendant Marissa Girard

                                                /s/ Kenton Girard

FILED - CS
IN THE CIRCUIT
WITH SUPPORT DIVISION

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

2026 FEB -3 AM II: 40

CLERK OF THE CIRCUIT COURT
OF COOK COUNTY

| | | |
|---|---|---|
| JANE F. GIRARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Calendar 89** |
| vs. | ) | |
| | ) | |
| KENTON GIRARD, and | ) | Case No. 2015-D-009633 |
| MARISSA GIRARD, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE AS TO INTRASTATE TRANSFER OF VENUE

Now comes Defendant KENTON GIRARD, in pro se, and hereby states:

Multiple previous filings and open court discussions in this litigation about the myriad problems complicating a Cook County venue for these proceedings have accrued, demonstrating that a change of venue under the application of *forum non conveniens* is warranted:

a.     Fair trial is impossible under Judge William Yu, who is defending multiple pending federal lawsuits brought by the parties and parties in interest hereunder yet refuses to recuse himself, in open violation of Illinois Judicial Canon 2.11;

b.     The petition seeking removal for cause against Judge William Yu was adjudicated in violation of the requirements set forth under 735 ILCS 5/2-1001(a)(3);

c.     Judge William Yu has shown open hostility to federal jurisdiction, by (a) entering an order with adverse findings against Kenton Girard on January 8 2026, and (b) entering an order for trial on January 21 2026 wherein jurisdiction lies in Seventh Circuit;

d.     Key expert witnesses for the defendants are practicing attorneys in the St. Louis area;

e. Documentary evidence of judicial bribery by Beermann LLP is currently maintained under 24x7 guard in the St. Louis area;

f. Plaintiff Jane Girard has voluntarily non-suited all custody related requests for relief, obviating the need for domestic relations functionaries to testify under the proceedings.

g. Percipient witnesses to the sexual abuse of the minor children by Plaintiff Jane Girard are currently residing in the St. Louis area;

Accordingly, Defendant Kenton Girard, in pro se, hereby provides notice that the venue of the proceedings hereunder has been transferred pursuant to Illinois Supreme Court Rule 187 and effective immediately to the Madison County Circuit Court.

**DATED: February 3, 2026**                    Respectfully submitted,

KENTON GIRARD, In Pro Se

By:     _/s/ Kenton Girard_____
965 Forestway Drive
Glencoe, IL 60022
kg5252@yahoo.com
Tel: 773-575-7035


## CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was filed with the Clerk of this Court and was served this 3rd day of February 2026 by email to the attorneys who have entered their appearances hereunder.

mdelster@beermannlaw.com
kpaige@beermannlaw.com for Plaintiff Jane F. Girard

kg5252@yahoo.com, for Defendant Kenton Girard

_/s/ Kenton Girard_